[No. A023884. First Dist., Div. Three. Sept. 20, 1985.]

WALTER J. MILLER, Plaintiff and Respondent, v.
C. ARTHUR SCIARONI, Defendant and Respondent;
GILMORE ENVELOPE CORPORATION, Intervener and Appellant.

308

**COUNSEL**

Joseph J. D'Andre and James L. English for Intervener and Appellant.

William L. Veen for Plaintiff and Respondent.

Glynn, Harvey & Tosney and Daniel M. Tosney for Defendant and Respondent.

OPINION

**WHITE, P. J.**—This is an appeal by Gilmore Envelope Corporation (hereafter appellant) from the order of dismissal of its complaint-in-intervention entered on June 27, 1983, in San Mateo County Superior Court. The order of dismissal sustained the demurrer filed by respondent C. Arthur Sciaroni, M.D. (hereafter defendant), without leave to amend, based on Civil Code section 3333.1. As the order of dismissal functions as a final determination of the rights of the parties, it is in effect a final judgment pursuant to Code of Civil Procedure section 557, and is therefore appealable. Notice of appeal was filed on August 17, 1983.

This appeal arises out of a medical malpractice action filed by Walter J. Miller (hereafter plaintiff) against defendant and others[1] on March 12, 1982, in San Mateo County Superior Court. On March 28, 1983, appellant (plaintiff's employer) was granted permission to intervene in order to assert a claim for workers' compensation benefits pursuant to Labor Code section 3852. On May 23, 1983, during the course of a jury trial on the merits, defendant filed a demurrer to appellant's complaint-in-intervention. At the hearing on the demurrer, on May 24 and May 25, 1983, appellant challenged both the constitutionality of Civil Code section 3333.1 and its applicability to appellant's claim for reimbursement for benefits conferred upon plaintiff but not claimed as damages by him in the malpractice proceedings.

On May 25, 1983, the court sustained defendant's demurrer without leave to amend. Trial continued to verdict in the absence of appellant. Judgment was rendered in favor of plaintiff and against defendant in the amount of $525,307. Included in the award was a sum of $38,000 for lost past wages, incorporating a deduction of $15,000 for temporary disability benefits paid by appellant. Judgment was rendered in favor of the other defendants.

Appellant presents two issues on appeal: one, whether Civil Code section 3333.1 violates either the equal protection or the due process provisions of the United States or the California Constitutions; and two, if not, whether Civil Code section 3333.1 bars appellant's claim for relief where the benefits conferred by appellant are not claimed as damages by plaintiff.

*Background*

Civil Code section 3333.1 is a provision of the Medical Injury Compensation Reform Act of 1975 (MICRA). This bill was enacted in response to

---

[1]Named as codefendants were Lance Barlas, M.D., Mary's Help Hospital, and Does I through XXX. The jury rendered a verdict in favor of these codefendants.

the medical malpractice insurance crisis against a background of legislative and gubernatorial belief that skyrocketing malpractice insurance rates would have a severe detrimental impact on California's health delivery system, particularly as regards medically indigent and low-income California residents. (*American Bank & Trust Co.* v. *Community Hospital* (1984) 36 Cal.3d 359, 371 [204 Cal.Rptr. 671, 683 P.2d 670, 41 A.L.R. 4th 233]; Governor's Proclamation to Leg. (May 16, 1975), Stats. 1975 (Second Ex. Sess. 1975-1976) p. 3947; Stats. 1975, Second Ex. Sess. 1975, ch. 2, § 12.5, p. 4007.) The purpose of the legislation in general, then, and of section 3333.1 in particular, is to protect California's health care delivery system by reducing the cost of medical malpractice insurance.

Civil Code section 3333.1 provides in relevant part: "(a) In the event the defendant so elects, in an action for personal injury against a health care provider based upon professional negligence, he may introduce evidence of any amount payable as a benefit to the plaintiff as a result of the personal injury pursuant to the United States Social Security Act, any state or federal income disability or workers' compensation act, any health, sickness or income-disability insurance, accident insurance that provides health benefits or income-disability coverage, and any contract or agreement of any group, organization, partnership, or corporation to provide, pay for, or reimburse the cost of medical, hospital, dental, or other health care services. Where the defendant elects to introduce such evidence, the plaintiff may introduce evidence of any amount which the plaintiff has paid or contributed to secure his right to any insurance benefits concerning which the defendant has introduced evidence. [¶] (b) No source of collateral benefits introduced pursuant to subdivision (a) shall recover any amount against the plaintiff nor shall it be subrogated to the rights of the plaintiff against a defendant." (Fn. omitted.)

Section 3333.1 is designed to implement the legislative goal of reducing malpractice insurance costs in two specific ways. Under subdivision (a), defendants are permitted to introduce evidence of benefits paid to the injured plaintiff by enumerated third party insurance carriers, including, specifically, workers' compensation carriers such as appellant. Subdivision (a) thus abrogates the traditional collateral source rule as to health care providers. ■ The collateral source rule is a judicial doctrine whereby defendants are prohibited from entering evidence of collateral benefits in an effort to reduce personal injury damage awards entered against them. (*Hrnjak* v. *Graymar, Inc.* (1971) 4 Cal.3d 725, 729 [94 Cal.Rptr. 623, 484 P.2d 599, 47 A.L.R. 3d 224]; see *Helfend* v. *Southern Cal. Rapid Transit Dist.* (1970) 2 Cal.3d 1 [84 Cal.Rptr. 173, 465 P.2d 61, 77 A.L.R.3d 398], for an extensive discussion of the nature, purpose, and scope of the collateral source rule.) The purpose underlying subdivision (a) is to preclude the double recovery

permitted to plaintiffs by the operation of the collateral source rule, under the assumption that the trier of fact will reduce the damage award by amounts already reimbursed. (*Barme* v. *Wood* (1984) 37 Cal.3d 174, 180, fn. 5 [207 Cal.Rptr. 816, 689 P.2d 446]; *California Physicians' Service* v. *Superior Court* (1980) 102 Cal.App.3d 91, 97 [162 Cal.Rptr. 266].) Such a reduction in fact occurred in the instant case. Presumably the awards reduced under the operation of subdivision (a) would in turn have a favorable impact on medical malpractice insurance rates for health care providers. (*Fein* v. *Permanente Medical Group* (1985) 38 Cal.3d 137, 166 [211 Cal.Rptr. 368, 695 P.2d 665]; *Brown* v. *Stewart* (1982) 129 Cal.App.3d 331, 336 [181 Cal.Rptr. 112].)

Under subdivision (b) of section 3333.1, the collateral source is barred from subrogating plaintiff's claim against defendant. However, Labor Code section 3852, a part of California's Workers' Compensation statutes, permits employers to subrogate plaintiff's claims against the tortfeasor as to benefits conferred, less any amount attributable to the employer's negligence.[2] Indeed, it is pursuant to this section that appellant entered his complaint-in-intervention at issue in this appeal. By necessary implication this conflict in statutes must be resolved in favor of section 3333.1 as the most recently enacted statute. (*Fuentes* v. *Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 1, 7 [128 Cal.Rptr. 673, 547 P.2d 449].) Furthermore, "the legislative history of section 3333.1, subdivision (b) indicates quite clearly that this provision was intended to prevail over other statutory subrogation provisions, such as Labor Code section 3852. An earlier draft of subdivision (b) would have preserved a collateral source's subrogation rights when such rights were 'expressly provided by statute,' but that exception was eliminated before the statute's enactment." (*Barme* v. *Wood, supra,* 37 Cal.3d at p. 178, fn. 4.) It is clear, then, that where Labor Code section 3852 and Civil Code section 3333.1 are in conflict, the latter must prevail.

In terms of the overall legislative purpose of reducing the cost of medical malpractice insurance to health care providers so as to minimize adverse impact on potential health care consumers, subdivision (b) functions by redistributing certain costs from the malpractice insurer, who continues to bear the general damage risk, to other third party indemnitors, who thus bear many special damage risks. (*Id.,* at p. 180; *California Physicians' Service, supra,* 102 Cal.App.3d at p. 97.)

---

[2] In effect, then, Labor Code section 3852, where applicable, functions as a bar to double recovery in personal injury claims. Nevertheless, in subdivision (a) of section 3333.1, the Legislature specifically included workers' compensation carriers as collateral sources subject to the operation of the statute. (See *Barme* v. *Wood, supra,* 37 Cal.3d at p. 178, fn. 4.)

In summary, then, Civil Code section 3333.1 is directed towards reducing defendant's medical malpractice insurance costs by: (1) encouraging lower awards to plaintiffs by admitting evidence of benefits received (subd. (a)); and (2) prohibiting third party insurers from subrogating plaintiff's rights as to benefits received, thus reallocating certain costs from defendant's insurer to other insurance carriers (subd. (b)).

*Appellant's Constitutional Challenge*

We have engaged in this lengthy analysis of the statute's history and operation in order to clearly present the reasoning of the California Supreme Court as regards appellant's constitutional challenge. The constitutionality of Civil Code section 3333.1, subdivision (b) was recently affirmed by the California Supreme Court (*Barme* v. *Wood, supra,* 37 Cal.3d 174), the constitutionality of subdivision (a) has likewise just been affirmed. (*Fein* v. *Permanente Medical Group, supra,* 38 Cal.3d 137.)

■ The standard of judicial review in an equal protection challenge to a legislative act is clearly set forth in *D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 16-17 [112 Cal.Rptr. 786, 520 P.2d 10]. *D'Amico* sets forth a two-part test. Where economic or social welfare legislation discriminates or differentiates in its treatment of classes or individuals, a presumption of constitutionality is invoked and the court will only look at whether the distinction bears some rational relationship to a legitimate state purpose. (*Id.,* at p. 16.) Where, however, a suspect classification or a fundamental interest is invoked, a strict scrutiny test is applied. (*Id.,* at p. 17.) ■ The legislation in question here clearly falls into the category of economic legislation, affecting as it does the economic interests of various indemnitors in the medical malpractice area. Further, the right to sue for negligently inflicted injuries is not a fundamental right. (*Brown* v. *Merlo* (1973) 8 Cal.3d 855, 862, fn. 2 [106 Cal.Rptr. 388, 506 P.2d 212, 66 A.L.R.3d 505].) It follows that a collateral source's right to recovery, subrogated in this case by statute and therefore properly subject to legislative regulation or abolition, and dependent in any case on plaintiff's assertion of right, is also not a fundamental right. (See *Barme* v. *Wood, supra,* at p. 180.) The rational relationship test is thus the correct standard of review in the instant case.

The legislative distinction at issue here prohibits specified collateral sources from recovery in medical malpractice actions only, as opposed to other tort claims. Appellant also asserts that the statute discriminates as to plaintiffs in malpractice actions by impermissibly discriminating between medical malpractice victims and other tort victims. These equal protection claims have been emphatically rejected by the California Supreme Court as

to both subdivisions of section 3333.1 as well as to other disputed provisions of MICRA. (*Barme* v. *Wood, supra,* at p. 182; *Fein* v. *Permanente Medical Group, supra,* 38 Cal.3d at p. 166; *American Bank & Trust Co., supra,* 36 Cal.3d at p. 371; *Roa* v. *Lodi Medical Group, Inc.* (1985) 37 Cal.3d 920, 930-932 [211 Cal.Rptr. 77, 695 P.2d 164], mod. 38 Cal.3d 620a.) The courts of 23 states and 3 federal circuits have likewise rejected equal protection challenges to similar malpractice legislation. (*American Bank & Trust Co., supra,* at p. 371, fn. 4.) Three state courts have reached a contrary conclusion. (*Ibid.*; see also *Fein* v. *Permanente Medical Group, supra,* 38 Cal.3d at pp. 175-178 (dis. opn. of Bird, C. J.).)

In applying the rational relationship test to section 3333.1, the California Supreme Court has found no difficulty in finding a legitimate state interest in the protection of a viable state health care delivery system. (*Barme* v. *Wood, supra,* at p. 180; *Fein* v. *Permanente Medical Group, supra,* 38 Cal.3d at pp. 166-167.) Appellant questions whether a reduction in the cost of medical malpractice premiums would have any substantive impact on the health care delivery system, and indeed, whether any reduction at all would ensue from the disputed enactment. In other words, appellant questions whether the distinction drawn as to rights of recovery of collateral sources in medical malpractice actions bears a rational relationship to the purpose of the legislation. It is "not the judiciary's function, however, to reweigh the 'legislative facts' underlying a legislative enactment. [Citation.] Whatever the reasons for the medical malpractice insurance problems, it is clear that the Legislature—which thoroughly investigated this matter through numerous hearings, audits and the like—could rationally conclude from the information before it that the high insurance costs in this particular area posed special problems with respect to the continued availability of adequate insurance coverage and adequate medical care and could fashion remedies— directed to the medical malpractice context—to meet these problems." (*American Bank, supra,* 36 Cal.3d at p. 372.) Since, as noted above, the purpose of the legislation is to reduce the cost of malpractice insurance in order to prevent a detrimental impact on the health care system, and since the effect of section 3333.1, subdivisions (a) and (b) is to reduce a defendant health care provider's overall liability by allowing for a potential reduction in damages (subd. (a)) and by prohibiting third party subrogation of such damages (subd. (b)), it is clear that the disputed code section bears a rational relationship to a legitimate state interest. (See *American Bank, supra,* 36 Cal.3d at p. 372; *California Physicians' Service, supra,* 102 Cal.App.3d at p. 97; *Barme* v. *Wood, supra,* 37 Cal.3d at p. 180; *Fein* v. *Permanente Medical Group, supra,* at p. 166.) Appellant's equal protection challenge must therefore fail.

Appellant's due process challenge is subject to the same analysis, using the same judicial standard of review. ■ "Since the demise of the sub-

stantive due process analysis of *Lockner* v. *New York* (1905) 198 U.S. 45 [49 L.Ed. 937, 25 S.Ct. 539], it has been clear that the constitutionality of measures affecting . . . economic rights under the due process clause does not depend on a judicial assessment of the justifications for the legislation or of the wisdom or fairness of the enactment. So long as the measure is rationally related to a legitimate state interest, policy determinations as to the need for, and desirability of, the enactment are for the Legislature." (*American Bank, supra,* 36 Cal.3d at p. 369.) We will not repeat the analysis we have undertaken above. Appellant's due process argument must likewise fail under a rational relationship test. Further, the California Supreme Court, in *Barme* v. *Wood, supra,* 36 Cal.3d at pages 180-181, has provided us with a lengthy analysis of the rational relationship test as applied to a due process challenge to subdivision (b) of section 3333.1, and has affirmed its constitutionality. It is specifically under subdivision (b) that any "taking" that would serve as the basis of a due process claim takes place. We therefore conclude that appellant's due process challenge, together with his equal protection challenge, must fail.

*Appellant's Statutory Challenge*

 Appellant further asserts that, even if the constitutionality of section 3333.1 is upheld, the trial court was in error in dismissing the complaint-in-intervention pursuant to subdivision (b) of the code section as to certain specific medical and rehabilitation expenses incurred by appellant but not claimed by plaintiff.

It is clear that the operation of subdivision (b) precludes any recovery by appellant of the $15,000 in temporary disability benefits conferred upon plaintiff and entered into evidence by defendant under subdivision (a), nor does appellant enter any such claim. Rather, appellant asserts that section 3333.1, subdivision (b) has no application whatsoever to benefits conferred by him upon plaintiff but not entered into evidence by defendant. Appellant bases his argument upon a double recovery theory. Thus, he asserts, since the purpose of the statute is to preclude double recovery, and since there is no possibility of double recovery by plaintiff of amounts not entered by either party into evidence, appellant can therefore proceed under Labor Code section 3852 as an intervener to subrogate benefits conferred.

Appellant's argument runs counter to the intent of the statute as noted above, and therefore must be dismissed. As noted above, by its operation Labor Code section 3852 already precludes double recovery by plaintiffs. Therefore, when the Legislature specifically included workers' compensation carriers as collateral source indemnitors covered by operation of Civil Code section 3333.1, it must have decided that there were additional reasons

for barring recovery by employer workers' compensation carriers. Basically, we note that the statute seeks to bar the workers' compensation carrier from being able to raise a complaint-in-intervention where there is a personal action against a health care provider. As noted above, the underlying purpose of section 3333.1 and of MICRA as a whole was not simply to prevent double recovery by plaintiffs, but to reduce overall malpractice insurance costs. The method chosen to reduce those costs in section 3333.1 was to redistribute certain damage risks to other indemnitors by precluding both plaintiff and collateral benefit sources from recovering from defendant's malpractice insurer benefits already conferred by that collateral source. To permit appellant to proceed against defendant in this suit as to additional claims of benefits conferred would be to defeat the intent of the statute. Once a defendant enters evidence of benefits conferred by appellant as workers' compensation carrier, appellant is barred from asserting additional claims as to benefits conferred. To decide otherwise would be to encourage a circumvention of legislative intent. As subdivision (b) plainly states: "No *source* of collateral benefits introduced pursuant to subdivision (a) shall recover any amount against the plaintiff nor shall it be subrogated to the rights of the plaintiff against a defendant." (Italics added.)

The order of dismissal of the court below is hereby affirmed.

Scott, J., and Merrill, J., concurred.