[No. E006225. Fourth Dist., Div. Two. May 12, 1989.]

JOHN B. GRAHAM, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and ORANGE
COUNTY TRANSIT DISTRICT, Respondents.

**COUNSEL**

Potter & Cohen and Thelma S. Cohen for Petitioner.

Smith, Wright & Peterson and Stephen P. Angelides as Amici Curiae on behalf of Petitioner.

Zonni, Ginocchio & Taylor, Leonard J. Silberman and Sharon Bernal for Respondents.

**OPINION**

**DABNEY, J.**—In his petition for writ of review, John B. Graham contends that respondent Workers' Compensation Appeals Board (Board) exceeded its power when it granted the petition of respondent Orange County Transit District (Transit District) for credit against Graham's workers' compensation award for a settlement Graham received in a malpractice action. This case presents an issue of first impression as to how the credit provisions of Labor Code sections 3858 and 3861 should be construed in light of the subsequent enactment of Civil Code section 3333.1 as part of the Medical Injury Compensation Reform Act of 1975 (MICRA). Specifically, we are asked to determine whether Civil Code section 3333.1 overrides the employer's right to credit when an employee settles, rather than tries, his medical malpractice action, and the settlement excludes workers' compensation benefits.

## FACTUAL AND PROCEDURAL BACKGROUND

In April 1983, Graham, a bus driver employed by the Transit District, was injured in a bus accident in the course of his employment. The Transit District was self-insured for workers' compensation. In July 1983, Graham filed an application with the Board for the adjudication of his claim for medical treatment and permanent disability benefits.

Graham also filed a civil action against Dr. Peter Macs (later amended to the Estate of Macs) seeking damages for medical malpractice in Dr. Macs's treatment of Graham for the injuries he sustained in the bus accident. The medical malpractice action was settled by payment to Graham of $150,000 less attorney's fees and costs. The trial judge found that the settlement was entered in good faith and was limited to damages for pain and suffering. Graham dismissed his cause of action against Dr. Macs for special damages.

The Transit District then petitioned for credit, in the amount of the settlement, against the Transit District's liability for future workers' compensation payments to Graham. The Transit District alleged that Graham's injuries were proximately caused, in part, by Dr. Macs's negligence. In opposition to the petition for credit, Graham's counsel submitted a declaration which stated that he indicated to the court at the settlement conference that Graham's medical expenses and disability would not be considered in the settlement because the defense would introduce evidence that workers' compensation benefits would pay those damages.[1] The workers' compensation judge allowed the requested credit.

Graham filed a petition for reconsideration with the Board on the ground that the malpractice settlement was not subject to credit. The workers' compensation judge issued a report and recommendation in which he stated that his original decision was in error and that he should have denied the

---

[1] The transcript of the trial court proceedings states: "[Counsel for Graham]: We have settled the claims against Dr. Macs and the estate of Dr. Macs in the amount of $150,000 new money. We have agreed that plaintiff will dismiss any and all claims for special damages in exchange for joint waiver of cost, waiver of cost from the defense.

"It is understood between the parties that the payment of $150,000 represents the special or the general damages of pain and suffering by Mr. Graham as a result of the alleged malpractice in the case.

"[Counsel for the Estate of Dr. Macs]: That $150,000 is being paid to compensate for the general damages and all claims for special damages are being dismissed in exchange for waiver of cost. . . . [A]nd there's a stipulation that the settlement is a good faith settlement.

". . . . . . . . . . . . . . . . . . . .

"The Court: I do find that the settlement in all respects is a good faith and equitable settlement, and it is approved by the Court. And that settlement is for pain and suffering as well as future pain and suffering as a result of the action filed in this case, and that the settlement is fair in all respects."

credit. The Board granted reconsideration. In its order, the Board stated that Civil Code section 3333.1 does not preclude the Transit District from asserting a credit against Graham's settlement. However, the Board ruled that because the malpractice did not cause the injury, but only enhanced or exacerbated it, the employer's credit should be limited to the workers' compensation benefits attributable to the exacerbation. Therefore, the Board remanded the cause for the workers' compensation judge to determine the extent of the Transit District's credit rights.

## DISCUSSION

### Appellate Jurisdiction

The Board stated in its order on Graham's petition for reconsideration that Civil Code section 3333.1 does not preclude the Transit District from asserting a credit against the settlement Graham obtained in his malpractice action. ■ The Board's determination of this threshold issue is an appealable order, even though the case is not final. (Lab. Code, § 5950; *Safeway Stores, Inc.* v. *Workers' Comp. Appeals Bd.* (1980) 104 Cal.App.3d 528, 531 [163 Cal.Rptr. 750].)

### Statutory Overview

*Workers' Compensation Subrogation Statutes.* Labor Code sections 3850 through 3864 contain a comprehensive subrogation scheme which includes both credit provisions[2] and reimbursement provisions.[3] The reimbursement provisions provide several methods for the employer (or its workers' compensation carrier) to recover from a third party tortfeasor workers' compensation benefits which the employer has already paid to the injured employee. (*Witt* v. *Jackson* (1961) 57 Cal.2d 57, 69 [17 Cal.Rptr. 369, 366 P.2d 641], modified on other grounds by *Rodgers* v. *Workers' Comp. Appeals Bd.*

[2] Labor Code section 3858 provides: "After payment of litigation expenses and attorneys' fees fixed by the court . . . and payment of the employer's lien, the employer shall be relieved from the obligation to pay further compensation to or on behalf of the employee . . . up to the entire amount of the balance of the judgment, if satisfied, without any deduction. No satisfaction of such judgment in whole or in part, shall be valid without giving the employer notice and a reasonable opportunity to perfect and satisfy his lien."

Labor Code section 3861 provides: "The appeals board is empowered to and shall allow, as a credit to the employer to be applied against his liability for compensation, such amount of any recovery by the employee for his injury, either by settlement or after judgment, as has not theretofore been applied to the payment of expenses or attorneys' fees, . . . or has not been applied to reimburse the employer."

[3] The reimbursement sections, which are not at issue in this case, allow the employer to bring an action directly against a third party tortfeasor (Lab. Code, § 3852), intervene in an action brought by the employee (Lab. Code, § 3853) or obtain a lien against a judgment obtained by the employee (Lab. Code, § 3856, subd. (b)).

(1984) 36 Cal.3d 330, 340 [204 Cal.Rptr. 403, 682 P.2d 1068] and *Associated Construction, & Engineering Co.* v. *Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 829 [150 Cal.Rptr. 888, 587 P.2d 684].) The credit provisions allow the employer to discontinue workers' compensation benefit payments until the amount of the benefits exceeds the amount of the employee's net recovery from the third party, to the extent the employer became liable for additional workers' compensation payments as a result of the malpractice. (*Hodge* v. *Workers' Comp. Appeals Bd.* (1981) 123 Cal.App.3d 501, 509, 513-515 [176 Cal.Rptr. 675].)

The subrogation provisions prevent a double recovery to an employee who makes both a workers' compensation claim and a claim against a third party tortfeasor and provide for reimbursement to the employer for workers' compensation benefits paid to the employee. (*Van Nuis* v. *Los Angeles Soap Co.* (1973) 36 Cal.App.3d 222, 229 [111 Cal.Rptr. 398].)

*Abrogation of Collateral Source Rule and Employer's Subrogation in MICRA.* Under the traditional collateral source rule, a jury may not consider the plaintiff's entitlement to benefits such as medical insurance or disability payments when the jury calculates the plaintiff's damages in a tort action. However, as part of MICRA, the Legislature enacted Civil Code section 3333.1 which abrogated the collateral source rule in medical malpractice actions.[4]

The California Supreme Court has explained: "Under [Civil Code] section 3333.1, subdivision (a), a medical malpractice defendant is permitted to introduce evidence of such collateral source benefits received by or payable to the plaintiff; . . . Although section 3333.1, subdivision (a) . . . does not specify how the jury should use such evidence, the Legislature apparently assumed that in most cases the jury would set plaintiff's damages at a lower level because of its awareness of plaintiff's 'net' collateral source benefits. [¶] In addition, section 3333.1, subdivision (b) provides that whenever such collateral source evidence is introduced, the source of those benefits is precluded from obtaining subrogation either from the plaintiff or from the medical malpractice defendant." (*Fein* v. *Permanente Medical Group* (1985) 38 Cal.3d 137, 164-165 [211 Cal.Rptr. 368, 695 P.2d 665].)

*Application of Civil Code Section 3333.1 to an Employer's Claim for Credit.* ▉ The Transit District contends that it was entitled to credit

---

[4]Civil Code section 3333.1 states: "(a) In the event the defendant so elects, in an action for personal injury against a health care provider based upon professional negligence, he may introduce evidence of any amount payable as a benefit to the plaintiff as a result of the personal injury pursuant to . . . any . . . worker's compensation act . . . .

"(b) No source of collateral benefits introduced pursuant to subdivision (a) shall recover any amount against the plaintiff nor shall it be subrogated to the rights of the plaintiff against a defendant."

against the settlement under Labor Code sections 3858 and 3861. Civil Code section 3333.1, subdivision (b) states: "No source of collateral benefits . . . shall recover any amount against the plaintiff . . . ." The Transit District argues that the words of the statute indicate only that a source of collateral benefits may not obtain reimbursement from a plaintiff, but does not restrict an employer's right to obtain credit for future benefits.

The resolution of this issue is a matter of first impression in the credit context. However, we find significant guidance in resolving this issue in cases in which California courts have resolved the analogous statutory conflict in the reimbursement context.

In *Miller* v. *Sciaroni* (1985) 172 Cal.App.3d 306, 311 [218 Cal.Rptr. 219] the trial court sustained a demurrer to the employer's complaint in intervention in which the employer sought to assert a claim for reimbursement under Labor Code section 3852 for workers' compensation benefits paid to the employee. The Court of Appeal affirmed. It explained, "The purpose underlying subdivision (a) is to preclude the double recovery permitted to plaintiffs by the operation of the collateral source rule, under the assumption that the trier of fact will reduce the damage award by amounts already reimbursed. [Citations.] Such a reduction in fact occurred in the instant case. Presumably the awards reduced under the operation of subdivision (a) would in turn have a favorable impact on medical malpractice insurance rates for health care providers. [Citations.]

"Under subdivision (b) of section 3333.1, the collateral source is barred from subrogating plaintiff's claim against defendant. However, Labor Code section 3852, . . . permits employers to subrogate plaintiff's claims against the tortfeasor as to benefits conferred, less any amount attributable to the employer's negligence. . . . By necessary implication this conflict in statutes must be resolved in favor of section 3333.1 as the most recently enacted statute. (*Fuentes* v. *Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 1, 7 [. . .].) Furthermore, 'the legislative history of section 3333.1, subdivision (b) indicates quite clearly that this provision was intended to prevail over other statutory subrogation provisions, such as Labor Code section 3852. An earlier draft of subdivision (b) would have preserved a collateral source's subrogation rights when such rights were "expressly provided by statute," but that exception was eliminated before the statute's enactment.' (*Barme* v. *Wood* [(1984) 37 Cal.3d 174, 178, fn. 4 (207 Cal.Rptr. 816, 689 P.2d 446)].) It is clear, then, that where Labor Code section 3852 and Civil Code section 3333.1 are in conflict, the latter must prevail.

"In terms of the overall legislative purpose of reducing the cost of medical malpractice insurance to health care providers so as to minimize adverse

impact on potential health care consumers, subdivision (b) functions by redistributing certain costs from the malpractice insurer, who continues to bear the general damage risk, to other third party indemnitors, who thus bear many special damage risks. [Citations.]

"In summary, then, Civil Code section 3333.1 is directed towards reducing defendant's medical malpractice insurance costs by: (1) encouraging lower awards to plaintiffs by admitting evidence of benefits received (subd. (a)); and (2) prohibiting third party insurers from subrogating plaintiff's rights as to benefits received, thus reallocating certain costs from defendant's insurer to other insurance carriers (subd. (b))." (*Miller, supra,* 172 Cal.App.3d at pp. 310-312, fn. omitted.)

The court's analysis in *Miller,* applying Civil Code section 3333.1 to an employer's claim for reimbursement, applies equally to an employer's claim for credit. Moreover, the California Supreme Court noted in *Fein* that the medical malpractice defendant may introduce evidence of benefits *received by or payable to* the plaintiff, and that the Legislature assumed that the jury would reduce the plaintiff's damages to reflect such benefits. (*Fein, supra,* 38 Cal.3d at pp. 164-165.) The court explained that Civil Code section 3333.1, subdivision (b) assures that the malpractice plaintiff ". . . will suffer no 'double deduction' from his tort recovery as a result of his receipt of collateral source benefits; . . . [and that] any reduction in malpractice awards that may result from the jury's consideration of the plaintiff's collateral source benefits will inure to [the malpractice defendant] rather than to the benefit of the collateral source." (*Id.,* at p. 165.)

If we construe the statute as the Transit District urges, and allow the employer credit from an already reduced recovery, the injured employee, not the medical malpractice defendant or the employer, would bear the cost of the medical malpractice to the extent of the workers' compensation benefits. In effect, the higher the workers' compensation benefits to which the employee is entitled, the lower his overall recovery. Such a construction of the credit provisions of the Labor Code is inconsistent with article XIV, section 4 of the California Constitution, which declares protection of injured employees through a comprehensive workers' compensation scheme to be the public policy of the State, and with Labor Code section 3202 which requires the workers' compensation statutes to be construed liberally to protect workers' benefits. The Legislature clearly intended a different result in enacting MICRA. Thus, the sensible interpretation of Civil Code 3333.1 is that it includes the employer's credit remedies as well as its reimbursement remedies.

*Application of Civil Code Section 3333.1 to Cases Which Are Settled Rather Than Tried.* The Transit District next contends that even if Civil Code

section 3333.1 applies in general to the credit sections of the Labor Code, it does not apply under the circumstances of this case. The Transit District asserts that under the clear and unambiguous language of the statute, the employer's right to credit is not affected unless there is a trial at which the medical malpractice defendant introduces evidence of workers' compensation benefits. ■ ■ ■ ■ Here, the medical malpractice action was settled rather than tried.[5]

■ Graham counters that the conditions for invoking the statute were met in this case where counsel acknowledged in settlement discussions that Graham was entitled to workers' compensation benefits and did not include such benefits in computing the settlement. Moreover, the parties stipulated at the settlement conference to dismiss the claims for special damages. The settlement thus did not include any sum for past or future medical costs or economic loss, on the assumption that Graham had been compensated for such loss by his "collateral source," the workers' compensation carrier.

It is a cardinal rule of statutory construction that courts will choose that interpretation which most nearly effectuates the purpose of the Legislature. (Code Civ. Proc., § 1859.) ■ " 'Once a particular legislative intent has been ascertained, it must be given effect " 'even though it may not be consistent with the strict letter of the statute.' " [Citation.] " (*Southland Mechanical Constructors, Corp.* v. *Nixen* (1981) 119 Cal.App.3d 417, 430 [173 Cal.Rptr. 917].) "The courts resist blind obedience to the putative 'plain meaning' of a statutory phrase where literal interpretation would defeat the Legislature's central objective." (*Leslie Salt Co.* v. *San Francisco Bay Conservation etc. Com.* (1984) 153 Cal.App.3d 605, 614 [200 Cal.Rptr. 575], fn. omitted.)

Legislative history indicates that MICRA ". . . was enacted in response to the medical malpractice insurance crisis against a background of legislative and gubernatorial belief that skyrocketing malpractice insurance rates would have a severe detrimental impact on California's health delivery

[5]The Transit District primarily relies on *McCall* v. *WCAB* (Cal.App. H000864). In *McCall,* on facts similar to those in this case, the appellate court ruled that Civil Code section 3333.1 did not bar an employer's claim for credit against the employee's settlement recovery. The Supreme Court granted review of that case in July 1986, but subsequently dismissed review. Under rule 976(d) of the California Rules of Court, "Unless otherwise ordered by the Supreme Court, no opinion superseded by a grant of review . . . shall be published. After granting review, after decision, or after dismissal of review and remand as improvidently granted, the Supreme Court may order the opinion of the Court of Appeal published in whole or in part." The Supreme Court did not order publication of the *McCall* case. Rule 977(a) of the California Rules of Court states: "An opinion that is not ordered published shall not be cited or relied on by a court or a party in any other action or proceeding . . . ." Thus, it was improper for the Transit District to cite *McCall,* and we do not consider *McCall* in our disposition of this matter.

system, particularly as regards medically indigent and low-income California residents. [Citations.] ▓ The purpose of the legislation in general, then, and of section 3333.1 in particular, is to protect California's health care delivery system by reducing the cost of medical malpractice insurance." (*Miller* v. *Sciaroni, supra,* 172 Cal.App.3d at pp. 309-310.)

In *Barme* v. *Wood, supra,* 37 Cal.3d 174, the California Supreme Court recognized that the damage-reducing effect of Civil Code section 3333.1 comes into play even if the procedures set forth in the statute are not followed. In *Barme,* the court upheld a summary judgment on a complaint in intervention filed by the employer seeking credit in an employee's medical malpractice case. There was no trial, no evidence of collateral source benefits was introduced, and a jury never considered the issue. The defendants had merely filed "a document indicating their intention to introduce [evidence of workers' compensation benefits] in the malpractice action." (*Id.,* at p. 178, fn. 3.) Nonetheless, the California Supreme Court upheld the summary judgment, recognizing that the practical effect of section 3333.1 is to reduce the plaintiff's recovery in any medical malpractice case where collateral source benefits are payable, regardless of whether the plaintiff obtains recovery in trial or otherwise.

▓ If we were to interpret the statute to require a trial before the employer is precluded from seeking credit or reimbursement, plaintiffs would be forced to try their cases unless medical malpractice defendants agreed to settle for sums sufficient to cover employers' costs. The legislative history of MICRA reflects deep concern with the cost of litigation. We cannot construe the collateral source benefit rules in a way that would discourage settlements and thus defeat the major purpose of the legislation.

To harmonize Civil Code section 3333.1 with the Labor Code credit provisions, we interpret section 3333.1 as impliedly creating an exception to the credit provisions whenever an injured party has demonstrably had his recovery reduced to reflect collateral source contributions. A more restrictive construction would shift a portion of the costs of medical malpractice to the injured party, contrary to the purposes of both MICRA and the workers' compensation statutes. In this case, the parties in the underlying medical malpractice case made an adequate factual record that Graham's settlement was reduced to exclude any recovery for collateral source benefits.

*Employer's Right to Credit Against Settlement Which Covers Only Pain and Suffering Damages.* Because we decide that Civil Code section 3333.1 precludes the employer's claim for credit, we need not consider Graham's additional contention that the employer may not obtain credit for damages

limited to pain and suffering which do not duplicate the employee's workers' compensation benefits for medical expenses and disability.

### DISPOSITION

The order of the Workers' Compensation Appeals Board is annulled.

Campbell, P. J., and McDaniel, J., concurred.

Respondents' petition for review by the Supreme Court was denied July 20, 1989. Panelli, J., was of the opinion that the petition should be granted.