138 Nev., Advance Opinion 33

## IN THE SUPREME COURT OF THE STATE OF NEVADA

DARIA HARPER, AN INDIVIDUAL; AND DANIEL WININGER, AN INDIVIDUAL,
Appellants,
vs.
COPPERPOINT MUTUAL INSURANCE HOLDING COMPANY, AN ARIZONA CORPORATION; COPPERPOINT GENERAL INSURANCE COMPANY, AN ARIZONA CORPORATION; LAW OFFICES OF MARSHALL SILBERBERG, P.C., A CALIFORNIA CORPORATION; KENNETH MARSHALL SILBERBERG, A/K/A MARSHALL SILBERBERG, A/K/A K. MARSHALL SILBERBERG, AN INDIVIDUAL,
Respondents.

No. 82158



FILED

MAY 05 2022

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court judgment, certified as final under NRCP 54(b), in an action for declaratory and injunctive relief. Eighth Judicial District Court, Clark County; Jerry A. Wiese, Judge.

*Affirmed.*

Blumberg Law Corporation and John P. Blumberg, Long Beach, California; Maier Gutierrez & Associates and Jason R. Maier, Las Vegas, for Appellants.

Hooks Meng & Clement and Dalton L. Hooks, Jr., and Sami N. Randolph, Las Vegas,
for Respondents Copperpoint Mutual Insurance Holding Company and Copperpoint General Insurance Company.

22-14323

McBride Hall and Robert C. McBride and Heather S. Hall, Las Vegas; Kjar, McKenna & Stockalper, LLP, and Robert L. McKenna, III, James J. Kjar, and Jon R. Schwalbach, El Segundo, California, for Respondents Law Offices of Marshall Silberberg, P.C., and Kenneth Marshall Silberberg.

---

BEFORE THE SUPREME COURT, HARDESTY, STIGLICH, and HERNDON, JJ.

## OPINION

By the Court, HERNDON, J.:

This appeal implicates the scope of NRS 42.021, Nevada's codification of the collateral source rule as it pertains to medical malpractice lawsuits. Subsection 1 of that statute provides that "[i]n an action for injury or death against a provider of health care based upon professional negligence, if the defendant so elects, the defendant may *introduce evidence* of any amount payable as a benefit to the plaintiff as a result of the injury or death" from a collateral source, such as workers' compensation benefits. (Emphasis added.) In turn, subsection 2 provides that the payer of collateral benefits introduced pursuant to subsection 1 cannot "[r]ecover any amount against the plaintiff; or [b]e subrogated to the rights of the plaintiff against a defendant."

Here, we are asked to consider whether NRS 42.021(2)'s prohibition on a collateral source provider's right to recover extends to a medical malpractice case that was settled before proceeding to trial. We conclude that, based on NRS 42.021's plain language, the statute applies only to situations in which a medical malpractice defendant "introduce[s] evidence" of a plaintiff's collateral source benefits, which necessarily does

SUPREME COURT
OF
NEVADA

(O) 1947A

not occur when a case is settled pretrial. Nor are we persuaded that any exceptions to our plain-language analysis are applicable. Accordingly, we affirm the district court's order denying appellant's request for a declaration that NRS 42.021 precluded respondent from recovering its workers' compensation payments from appellant's medical malpractice settlement proceeds.

## FACTS AND PROCEDURAL HISTORY

In 2014, appellant Daria Harper sustained a work-related injury in Arizona.[1] Respondents Copperpoint Mutual Insurance Company and Copperpoint General Insurance Company (collectively Copperpoint) are Arizona-based workers' compensation insurers that provided coverage for Harper's injury, which included medical treatment. As part of that treatment, Harper underwent a procedure in Las Vegas in 2015 during which Harper suffered an additional severe injury resulting in quadriplegia, as well as severe pain, suffering, and emotional distress. In 2016, Harper filed a medical malpractice action in Nevada against the doctors and hospital who performed the Las Vegas procedure. Harper was represented by respondents Kenneth Marshall Silberberg and the Law Offices of Marshall Silberberg (Silberberg) in that action.

When Copperpoint became aware of Harper's medical malpractice action, it sent a letter to Silberberg stating that, under Arizona Revised Statute section 23-1023, Copperpoint was entitled to a lien against any recovery Harper might thereafter obtain in the action. Specifically,

---

[1]Harper's husband is a plaintiff in the underlying action and is also named as an appellant in this appeal. However, his claims hinge on the viability of Harper's claims, so this opinion simply refers to appellants as "Harper."

Copperpoint claimed that it was entitled under that statute to be reimbursed for the roughly $3 million that it had paid in workers' compensation-related benefits stemming from the initial work-related injury.[2] Silberberg sent a letter in response, explaining that Harper had already settled the medical malpractice action with the doctors and hospital for roughly $6 million and that under NRS 42.021(2), Copperpoint was prohibited from seeking reimbursement. Thereafter, Copperpoint sent Harper a letter notifying her that it was suspending her workers' compensation coverage until she reimbursed Copperpoint for the $3 million it had already paid her.

This prompted Harper to file the underlying action against both Copperpoint and Silberberg. As relevant here, Harper asserted claims for declaratory and injunctive relief, claiming that NRS 42.021(2) prohibited

---

[2]Arizona Revised Statute section 23-1023 is similar to NRS 616C.215(5) in that both statutes entitle a workers' compensation provider to a lien against any monetary recovery a covered employee obtains against a third party. *Compare* NRS 616C.215(5), *with* Ariz. Rev. Stat. Ann. § 23-1023(D) (2014). Both Nevada and Arizona also have statutes pertaining specifically to medical malpractice actions wherein a defendant may introduce evidence of a plaintiff receiving third-party payments, including workers' compensation benefits. *Compare* NRS 42.021(1), *with* Ariz. Rev. Stat. Ann. § 12-565(A) (2021). However, whereas NRS 42.021(2) prohibits a third-party payer of benefits (such as a workers' compensation provider) from seeking reimbursement from the medical malpractice plaintiff in such instances, Arizona Revised Statute 12-565(C) prohibits seeking reimbursement "[u]nless otherwise expressly permitted to do so by statute." Here, the parties appear to agree that Arizona Revised Statute section 23-1023(D) qualifies as the "express[ ] permi[ssion]" referred to in section 12-565(C), such that Arizona law permits a workers' compensation provider to recover from a medical malpractice plaintiff when the defendant has introduced evidence of workers' compensation payments, whereas in Nevada, NRS 42.021(2) prohibits a workers' compensation provider from seeking such a recovery in those circumstances.

Copperpoint from asserting a lien against her settlement proceeds and seeking an injunction requiring Copperpoint to continue paying her workers' compensation benefits.[3]

After filing her complaint, Harper filed a motion for partial summary judgment, making a two-step argument that (1) NRS 42.021(2) prohibited Copperpoint from asserting a lien against her settlement proceeds, and (2) that statute, rather than conflicting Arizona law, was applicable to the underlying litigation. Contemporaneously, Copperpoint filed an NRCP 12(b)(5) motion to dismiss wherein it essentially argued the mirror image of Harper's arguments, namely, that (1) NRS 42.021(2) *does not* prohibit Copperpoint from asserting a lien against Harper's medical malpractice settlement proceeds, and (2) even if NRS 42.021 does prohibit Copperpoint from doing so, conflicting Arizona law governs the reimbursement issue. In addition, Copperpoint argued that the district court lacked subject matter jurisdiction because Arizona's workers' compensation system had exclusive jurisdiction over Harper's claims, which, in effect, were simply seeking continued workers' compensation benefits.

The district court denied Harper's motion for partial summary judgment and granted Copperpoint's NRCP 12(b)(5) motion. In so doing, the district court concluded that NRS 42.021's plain language applied only to actions where third-party payments were "introduce[d] [into] evidence" and did not apply to cases that settled before trial. In light of that

---

[3]In the event that NRS 42.021(2) did not prohibit Copperpoint from asserting a lien, Harper alternatively asserted a legal malpractice claim against Silberberg for its handling of the settlement in her previous medical malpractice action.

conclusion, the district court did not definitively resolve whether NRS 42.021 should apply instead of conflicting Arizona law, nor did it resolve Copperpoint's argument that it lacked subject matter jurisdiction over the matter. Thereafter, the district court certified its order as final under NRCP 54(b), and Harper filed this appeal.[4]

## DISCUSSION

Before considering the parties' arguments regarding NRS 42.021, we must first address Copperpoint's argument that the district court lacked subject matter jurisdiction over Harper's claims. We review both issues de novo. *See Ogawa v. Ogawa*, 125 Nev. 660, 667, 221 P.3d 699, 704 (2009) ("Subject matter jurisdiction is a question of law subject to de novo review."); *see also Williams v. United Parcel Servs.*, 129 Nev. 386, 391, 302 P.3d 1144, 1147 (2013) (recognizing that issues of statutory construction are reviewed de novo).

*The district court had subject matter jurisdiction over Harper's claims for declaratory and injunctive relief*

As a threshold matter on appeal, Copperpoint reiterates its argument that the district court lacked subject matter jurisdiction over Harper's declaratory and injunctive relief claims. Copperpoint appears to be contending that Harper's claims are, in essence, simply seeking continued workers' compensation benefits that must be pursued through Arizona's workers' compensation system. *Cf.* Ariz. Rev. Stat. Ann. § 23-

---

[4]Despite the district court having not resolved Harper's claims against Silberberg, this court permitted Silberberg to file a brief because Harper's claims against Silberberg hinge on the success of Harper's appellate arguments. Although Silberberg is listed as a respondent and has filed an answering brief, Silberberg's arguments therein are aligned with Harper's arguments, and we need not address them separately in this opinion.

1022(A) (1984) (providing that "[t]he right to recover compensation pursuant to . . . [Arizona's worker's compensation statutes] for injuries sustained by an employee . . . is the exclusive remedy against the . . . employer's workers' compensation insurance carrier"). For support, Copperpoint observes that Harper *has* filed a claim with Arizona's workers' compensation system that is now proceeding through *Arizona*'s appellate court system. In response, Harper contends that she is not actually seeking continued workers' compensation benefits (even though her injunctive relief claim requests precisely that), but that she instead is simply seeking a declaration that Copperpoint cannot assert a lien against her medical malpractice settlement proceeds under Nevada law. In short, Harper does not meaningfully address the significance of the Arizona litigation.

Nonetheless, having considered both parties' arguments, we conclude that the district court had subject matter jurisdiction over Harper's claims. While Harper's claims may incidentally be seeking continued *workers' compensation coverage*, the gravamen of her complaint seeks a judicial declaration that, under NRS 42.021, Copperpoint is prohibited from seeking reimbursement from her *medical malpractice* settlement proceeds. Characterized as such, Harper's complaint seeks a judicial interpretation of a Nevada statute that affects the parties' rights to proceeds from a medical malpractice action that was filed in Nevada and that stemmed from alleged malpractice that occurred in Nevada. Such a request for relief falls squarely within the district court's jurisdiction. *See* NRS 30.030 (providing that under Nevada's Uniform Declaratory Judgments Act, "[c]ourts of record within their respective jurisdictions shall have power to declare rights, status and other legal relations whether or not further relief is or could be claimed" and that "[t]he declaration may be

either affirmative or negative in form and effect"); *Kress v. Corey*, 65 Nev. 1, 26, 189 P.2d 352, 364 (1948) (holding that the only prerequisites for a court to grant declaratory relief are that "(1) there must exist a justiciable controversy; that is to say, a controversy in which a claim of right is asserted against one who has an interest in contesting it; (2) the controversy must be between persons whose interests are adverse; (3) the party seeking declaratory relief must have a legal interest in the controversy, that is to say, a legally protectible interest; and (4) the issue involved in the controversy must be ripe for judicial determination"). Based on the foregoing, we determine that at the time Harper filed her complaint, a justiciable controversy existed between herself and Copperpoint that was ripe for judicial determination and as such was appropriately brought as a declaratory relief action. Accordingly, we conclude that the district court had subject matter jurisdiction over Harper's claims for declaratory and injunctive relief.

*By its plain language, NRS 42.021 does not prohibit a collateral source provider from seeking reimbursement from medical malpractice proceeds when the medical malpractice action is settled before trial*

We next consider whether NRS 42.021 applies to settlements in addition to trials. In relevant part, NRS 42.021 provides,

> 1. In an action for injury or death against a provider of health care based upon professional negligence, if the defendant so elects, *the defendant may introduce evidence of any amount payable as a benefit to the plaintiff* as a result of the injury or death *pursuant to* the United States Social Security Act, *any state* or federal income disability or *worker's compensation act* . . . . If the defendant elects to introduce such evidence, the plaintiff may introduce evidence of any amount that the plaintiff has paid or contributed to secure the plaintiff's

right to any insurance benefits concerning which the defendant has introduced evidence.

> 2. *A source of collateral benefits* introduced pursuant to subsection 1 *may not*:

> (a) *Recover any amount against the plaintiff*; or

> (b) Be subrogated to the rights of the plaintiff against a defendant.

(Emphases added.)[5]

Both Harper and Copperpoint agree that subsection 1's reference to "introduce evidence," by its terms, applies to trials but not settlements. *Cf. Leven v. Frey*, 123 Nev. 399, 403, 168 P.3d 712, 715 (2007) ("Generally, when a statute's language is plain and its meaning clear, the courts will apply that plain language."). The parties disagree, however, whether subsection 2 should be construed to apply to settlements as well. Harper raises two arguments in favor of applying the statute to settlements: (1) construing it by its plain language would produce an absurd result; or (2) the statute should be construed consistent with the way the California Court of Appeal has construed California Civil Code section 3333.1, the statute upon which NRS 42.021 was based. We address each of Harper's arguments in turn.

---

[5]NRS 42.021 was enacted by Nevada's voters in 2004 as part of a statewide ballot initiative entitled "Keep Our Doctors in Nevada" (KODIN). *See* Secretary of State, 2004 Statewide Ballot Questions Summary, at 1, https://www.leg.state.nv.us/division/research/votenv/ballotquestions/2004.pdf. The primary purpose of KODIN and NRS 42.021 was to decrease the costs of medical malpractice insurance in order to keep doctors from leaving the practice of medicine in Nevada. *See* Secretary of State, Statewide Ballot Question No. 3, 15-16 (Argument in Support of Question No. 3 2004) (explaining that Question No. 3, if enacted, would decrease the cost of medical malpractice insurance).

*Construing NRS 42.021 by its plain language would not produce an absurd result*

As indicated, NRS 42.021(1) permits a defendant in a medical malpractice action to "introduce evidence" of third-party payments, which, by definition, limits the statute's applicability to trials. *See Introduce Into Evidence, Black's Law Dictionary* (11th ed. 2019) ("To have (a fact or object) admitted into the trial record . . . ."). Harper contends that applying NRS 42.021 by its plain language would produce absurd results and that this court should therefore go beyond the statute's plain language and apply it to settlements. *Cf. Young v. Nev. Gaming Control Bd.*, 136 Nev. 584, 586, 473 P.3d 1034, 1036 (2020) (recognizing that this court interprets statutes by their plain meaning unless there is ambiguity, "the plain meaning would provide an absurd result," or the plain meaning "clearly was not intended" (internal quotation marks omitted)). In particular, the "absurdity" that Harper posits is that if NRS 42.021 does not apply to settlements,

> parties who wanted to settle a medical malpractice case and have the benefit of barring a workers' compensation lien, would have to enter into the charade of a two-phase settlement agreement that required them in phase one to begin a trial where evidence of the collateral source payments was introduce[d] into evidence, then immediately inform the district court of the settlement thereby ending the trial.

We are not persuaded by Harper's argument. In particular, and as this court has previously observed, the intent behind NRS 42.021(1) and (2) is that if a medical malpractice defendant chooses to introduce evidence that a plaintiff received a third-party payment, the jury will reduce the plaintiff's damages award by that same amount, thereby making it appropriate to prohibit the third-party payer from seeking reimbursement from that award. *See McCrosky v. Carson Tahoe Reg'l Med. Ctr.*, 133 Nev.

SUPREME COURT
OF
NEVADA

(O) 1947A

10

930, 936, 408 P.3d 149, 155 (2017) (explaining the intent of NRS 42.021(1) and (2) based on this court's reading of the explanations provided in the 2004 statewide ballot question); *see also* Secretary of State, Statewide Ballot Question No. 3, 15-16 (Argument in Support of Question No. 3 2004) (explaining that Question No. 3, if approved, "stops 'double-dipping' by informing juries if plaintiffs are receiving money from other sources for the same injury"); *id.* at 18 (Rebuttal to Argument Against Question No. 3) (explaining that Question No. 3, if approved, would permit a "jury [to] be told about [third-party] payments *and use that information in deciding what to award the plaintiff*" (emphasis added)). Accordingly, NRS 42.021(1) and (2) make sense in the context of a trial, but not necessarily in the context of a settlement wherein a plaintiff and a defendant (such as Harper and the medical malpractice defendants) entered into an agreement in which the third-party provider (such as Copperpoint) was not involved in the settlement negotiations.

Thus, although a plain-language construction of NRS 42.021 *could* result in the sham "trials" that Harper envisions, it logically, and more likely, would result in medical malpractice plaintiffs and defendants accounting for the third-party payments in negotiating a settlement amount or, similarly, including the third-party payer in the settlement negotiations. The latter results are not absurd and, to the contrary, are in line with NRS 42.021's intent to prevent a plaintiff from "double-dipping."

Consequently, we are not persuaded that a plain-language construction of NRS 42.021 would produce an "absurd" result, which is a result "so gross as to shock the general moral or common sense." *Home Warranty Adm'r of Nev., Inc. v. State, Dep't of Bus. and Indus.*, 137 Nev., Adv. Op. 5, 481 P.3d 1242, 1247 (2021) (quoting *Crooks v. Harrelson*, 282

SUPREME COURT
OF
NEVADA

(O) 1947A

U.S. 55, 60 (1930)). Accordingly, we conclude that NRS 42.021(2)'s bar regarding a collateral benefit provider's ability to recover does not apply in medical malpractice cases that are settled before trial.

*We decline to construe NRS 42.021 consistently with how the California Court of Appeal has construed its statutory analog*

In the alternative to her absurd-results argument, Harper contends that NRS 42.021 should apply to settlements because the California Court of Appeal has construed California Civil Code section 3333.1, the statute upon which NRS 42.021 was based, to apply to settlements.[6] *Cf. State ex rel. Harvey v. Second Judicial Dist. Court*, 117 Nev. 754, 763, 32 P.3d 1263, 1269 (2001) ("[W]hen a statute is derived from a sister state, it is presumably adopted with the construction given it by the highest court of the sister state." (quoting *Clark v. Lubritz*, 113 Nev. 1089, 1096 n.6, 944 P.2d 861, 865 n.6 (1997))); *Ex parte Skaug*, 63 Nev. 101, 107-08, 164 P.2d 743, 746 (1945) (recognizing the same canon of statutory construction). In particular, Harper relies on *Graham v. Workers' Compensation Appeals Board*, 258 Cal. Rptr. 376 (Ct. App. 1989). The *Graham* court addressed the identical issue presented here: whether California Civil Code section 3333.1, despite its plain language applying only to trials, should also apply to settlements. *Id.* at 381. The *Graham* court concluded that "blind obedience" to the statute's plain language would defeat the Legislature's purpose of enacting section 3333.1, which was part of a larger bill intended to reduce the cost of medical malpractice insurance and, according to the *Graham* court, also to reduce the cost of medical malpractice litigation. *Id.* at 381-82. Given that the bill that included

---

[6]Copperpoint does not dispute that NRS 42.021 is substantively identical to California Civil Code section 3333.1.

section 3333.1 was intended to reduce the cost of medical malpractice litigation, the *Graham* court held that applying section 3333.1 to settlements would further that purpose. *Id.* at 382.

Harper contends that because *Graham* was decided before NRS 42.021 was enacted by Nevada's voters in 2004, the voters *must* have adopted NRS 42.021 with the construction that *Graham* gave California Civil Code section 3333.1. Despite Harper's contention, we nevertheless are not persuaded that we should apply our adopt-the-sister-state's-construction rule of statutory construction in this instance for three reasons. First, and most significantly, as we explained above, NRS 42.021's language is plain and unambiguous, meaning there is no language to actually "construe." *See Leven*, 123 Nev. at 403, 168 P.3d at 715 ("Generally, when a statute's language is plain and its meaning clear, the courts will apply that plain language."); *White v. Warden, Nev. State Prison*, 96 Nev. 634, 636, 614 P.2d 536, 537 (1980) ("[W]e recognize that the intent of the legislature [or, in this case, Nevada's voters] is the controlling factor and that, if the statutes under consideration are clear on their face, we cannot go beyond them in determining [the voters'] intent." (citing, inter alia, *State v. Beemer*, 51 Nev. 192, 199, 272 P. 656, 658 (1928))). Second, *Graham* is not a decision by California's highest court, and in the absence of supporting authority cited by Harper, we are reluctant to expand our adopt-the-sister-state's-construction rule to decisions of a state's intermediate courts.[7] *See*

---

[7]Harper also relies on the California Supreme Court's decision in *Barme v. Wood*, 689 P.2d 446 (Cal. 1984). She contends that *Barme* held that California Civil Code section 3333.1 applies even when there is no trial. This is not completely accurate, because although there had been no trial in *Barme*, the California Supreme Court simply addressed whether section 3333.1 violated due process or equal protection. *Id.* at 450-51 (holding that

*Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006) (observing that it is a party's responsibility to support arguments with on-point authority). Finally, we believe that the *Graham* court's rationale for applying section 3333.1 to settlements is somewhat tenuous, in that it is questionable whether applying it as such would have any appreciable impact on decreasing the costs of medical malpractice insurance, which was the purpose behind Nevada's voters enacting NRS 42.021. *See* Secretary of State, Statewide Ballot Question No. 3, 15-16 (Argument in Support of Question No. 3 2004) (explaining that Question No. 3 would decrease the cost of medical malpractice insurance); *see also Pascua v. Bayview Loan Servicing, LLC*, 135 Nev. 29, 31, 434 P.3d 287, 289 (2019) ("[W]here the statutory language does not speak to the issue before us, we will construe it according to that which reason and public policy would indicate the legislature [or, in this case, Nevada's voters] intended." (original alterations omitted)). Accordingly, we decline to apply NRS 42.021 in the same manner that the California Court of Appeal applied California Civil Code section 3333.1 in *Graham*.

*CONCLUSION*

We hold that the plain language of NRS 42.021(1) and (2) prohibits a payer of collateral source benefits from seeking reimbursement from a medical malpractice plaintiff only when the medical malpractice defendant "introduce[s] evidence" of those payments, which necessarily does not occur when a case is settled pretrial. Nor are we persuaded that any exceptions to our plain-language analysis are applicable or that we

---

there was no violation). Thus, we conclude that *Barme* does not speak to whether California Civil Code section 3333.1 applies absent a trial.

should adopt the California Court of Appeal's application of California's analogous statute. Accordingly, we affirm the judgment of the district court.

_____, J.
Herndon

We concur:

_____, J.
Hardesty

_____, J.
Stiglich