SCHAFFER *v.* EIGHTY-ONE HUNDRED JEFFERSON AVENUE
EAST CORP.

1. LANDLORD AND TENANT—FRAUD—ACCOUNTING—CORPORATIONS.

Wilful failure to pay rent for apartments owned by nonprofit
cooperative association, and promoter and holding company he
controlled, to induce foreclosure of trust mortgage and elimina-
tion of interest of stockholders of association who are also
tenants of apartments it owns is fraudulent and gives right
to accounting to tenants for fraud involved.

2. CORPORATIONS—REORGANIZATION—FRAUD.

Reorganization plan effected by promoter, holding company he
controlled and trustee under trust mortgage should be enjoined
if part of scheme to defraud by foreclosure of interest of
stockholder-tenants of nonprofit cooperative association hold-
ing title.

3. JOINT ADVENTURES—CORPORATIONS.

Joint adventurers, having adopted corporate form for carrying
out their project, must submit to its burdens and may not
don or doff such form at pleasure to the detriment of third
parties.

4. STOCK AND STOCKHOLDERS—PARTIES—FORECLOSURE ON CORPORATE
PROPERTY.

Stockholders of nonprofit cooperative association organized to
own and lease real estate to the stockholders *held,* subsequent
lessees without such legal or equitable title as to make them
necessary parties to foreclosure of trust mortgage.

5. LANDLORD AND TENANT—TITLE TO LAND—CORPORATIONS—FRAUD.

Stockholder-tenants of nonprofit cooperative association are not
entitled to lien on premises owned by it for fraud of promoter
and his holding company which transferred property to asso-
ciation; their remedy being action for damages.

6. SAME—CORPORATIONS—MISAPPROPRIATION OF FUNDS.

Lien in favor of stockholder-tenants of nonprofit cooperative
association may not attach to real estate held by it for mis-
appropriation of its funds by corporate officers where no fraud
is alleged to have been committed at inception of their relation
with association.

7. CORPORATIONS—MISAPPROPRIATION OF FUNDS.

Misappropriation of corporate funds by corporate officers is a wrong against corporation and all its stockholders, not a wrong for which corporation is liable in damages to its stockholders.

8. FRAUD—REMEDIES—ACTION FOR DAMAGES—RESCISSION.

Remedy for fraud is action at law for damages, where rescission is not prayed in equity.

9. CONSPIRACY—PLEADING—FORECLOSURE.

Charge of conspiracy to "freeze out" plaintiffs, stockholder-tenants of nonprofit cooperative association owning real estate subject to mortgage, by foreclosure of said mortgage *held,* not supported by averments as to reorganization plan presented and that trustee under mortgage permitted corporate officers to misappropriate corporate funds instead of demanding payments due on mortgage.

10. MORTGAGES—ENFORCEMENT OF LIEN.

Mortgagee owes no duty to persons interested in real estate to enforce collection of his debt on peril of losing or impairing enforcement of his lien.

11. SAME—TRUSTS—PAYMENT—INJUNCTION OF FORECLOSURE.

Trust mortgage bondholders are entitled to payment or foreclosure and no rule of equity would permit injunction of their action until someone voluntarily pays default.

12. INJUNCTION—FORECLOSURE—PLEADING.

Bill by stockholder-tenants of mortgagor nonprofit cooperative association to enjoin foreclosure of trust mortgage *held,* to state case insufficient to entitle plaintiffs to relief.

13. ACTION—PARTIES—CAUSES OF ACTION—MISJOINDER.

Bill in suit by stockholder-tenants of nonprofit cooperative association against promoter, holding company he organized and controlled and their own corporation for accounting for fraud, for misappropriation of corporate funds and other relief and against trust mortgagee to enjoin foreclosure *held,* multifarious for joinder of parties and causes of action not authorized by 3 Comp. Laws 1929, § 13962.

14. APPEAL AND ERROR—REMAND FOR AMENDMENT OF PLEADING.

Upon affirmance of order granting motion to dismiss multifarious bill, case is remanded for amendment of bill pursuant to 3 Comp. Laws 1929, § 15508.

Appeal from Wayne; Toms (Robert M.), J. Submitted April 25, 1934. (Docket No. 163, Calendar No. 37,696.) Decided June 4, 1934. Rehearing denied September 18, 1934.

Bill by Harry F. Schaffer and others against Eighty-One Hundred Jefferson Avenue East Corporation, Alden Park Manor, Inc., Michigan corporations, Kenneth M. DeVos, Union Guardian Trust Company, a Michigan corporation, individually and as trustee and receiver, and George H. Kirchner, its conservator, for an accounting, to set aside foreclosure proceedings, for an injunction and other relief. Bill dismissed. Plaintiffs appeal. Affirmed, and remanded with leave to amend bill.

*Edward N. Barnard,* for plaintiffs.

*Dykema, Jones & Wheat,* for defendants Eighty-One Hundred Jefferson Avenue East Corporation, Alden Park Manor, Inc., and DeVos.

*Milburn & Semmes,* for defendant Union Guardian Trust Company, as mortgage trustee and receiver.

*Rolla L. Carpenter* and *George B. Shaeffer,* for defendants Union Guardian Trust Company, individually, and George H. Kirchner, its conservator.

FEAD, J. Plaintiffs review decree dismissing their bill of complaint for multifariousness and want of equity. In substance the bill alleges:

In 1922, defendant DeVos acquired real estate in Detroit and erected on it four cross-shaped eight-story apartment buildings, containing 352 apartments and a large underground garage, the whole paid for from the proceeds of a $2,000,000 mortgage. In 1923 he organized Alden Park Manor, Inc. (the

holding company), as a Michigan profit corporation, and conveyed the premises to it. In 1927 the mortgage was refinanced and discharged through a new trust mortgage to Union Trust Company, trustee (now Union Guardian Trust Company), for $1,875,000. DeVos is controlling stockholder and manager of the holding company and conducts it for his personal benefit.

The project was not financially successful and, in 1927, DeVos decided to make sale of individual apartments to individual purchasers. To induce plaintiffs and the public to buy, he made many promises and representations, particularly that a corporation, Eighty-One Hundred Jefferson Avenue East Corporation (cooperative association), would be organized, with a capital of $2,050,000, to own and operate the property, the project was sound financially and the interest of a purchaser would be represented by a 30-year lease, renewable for like periods, and certificate of stock in the cooperative association, which would constitute an ownership in the land and buildings. Afterwards he made other representations to similar effect. Prospective purchasers were given full notice of the mortgage.

In 1927 DeVos organized the cooperative association as a nonprofit corporation under the laws of this State to acquire and own the real estate, manage and lease the land and buildings, "to be held by the stockholders as tenants on the cooperative basis." By-laws were adopted providing for leasing apartments to the stockholders. DeVos caused the holding company to convey the premises to the cooperative association subject to the mortgage, the association assuming and agreeing to pay it. And, in consideration, the association transferred to the holding company all of its capital stock.

In reliance upon the promises and representations made by DeVos and on the articles and by-laws of the association the plaintiffs purchased apartments at prices ranging from about $5,000 to $35,000. The instruments in connection with a purchase were:

1. Application for purchase, to the holding company.

2. A ''receipt of your application for the purchase of your apartment,'' from the holding company.

3. Promissory note from purchaser, payable to himself and indorsed in blank for unpaid balance, when purchase price was not paid in full, delivered to the holding company.

4. Stock certificate of association for a designated number of shares, running to the purchaser, on assignment from holding company.

5. Stockholders' lease from the association as landlord and to the purchaser as tenant.

The application gave notice of the mortgage, its assumption by the association, and provided that the note for the unpaid balance should be secured by a pledge of the stock and lease and that the stockholder should vote for the approval of the issuance of all leases to persons approved by the holding company.

The note included the pledge of stock and lease with right of holder to sell on default and to reenter the premises and repossess the apartment by any appropriate action.

The stockholders' lease described the purpose for which the association was incorporated and provided terms in detail; that the lease was for the life of the corporation; the lessee should pay as rent an annual assessment made by the board of directors of a proportionate part of the carrying charges of

the association, including operating expenses and principal and interest on the mortgage debt; "that this lease and the term hereby created" should cease at the option of the association on certain contingencies, as if the lessee cease to be a stockholder, or be declared bankrupt, or make a general assignment for creditors, or a receiver for his property be appointed, or his stock be levied on or sold as pledged security, or the lessor, by a two-thirds vote, in amount of capital stock, desire to sell the property, or, by a three-fourths vote, the association determine the tenancy of the lessee be undesirable because of objectionable conduct on his part or that of his visitors; and other terms.

Upon the facts stated, plaintiffs claim to be the owners of their respective apartments and their interests are real estate which cannot be terminated by sale of their stock or through summary proceedings.

Plaintiffs are informed and believe that a large number of the promises and representations made by DeVos were untrue, he knew it, made them with intent to induce plaintiffs to part from their money, and plaintiffs did not discover their falsity until recently, particularly the representations regarding the financial soundness of the project were false, DeVos and the two corporations did not pay nor intend to pay the rental charges against them but misappropriated to themselves large sums in violation of the articles of association instead of making payment on the mortgage; wherefore, plaintiffs charge that a fraud has been perpetrated on them by DeVos, the holding company and the association and they should account for the damages and plaintiffs have a lien on the premises.

The promissory notes given to the holding company have been transferred to defendant Union Guardian Trust Company, which claims to be the owner but is not a *bona fide* purchaser; plaintiffs have no liability thereon and the company should be restrained from commencing any action for recovery thereof.

On November 24, 1931, the Union Guardian Trust Company, as trustee, filed bill for foreclosure of the trust mortgage against both the holding company and the association and the trust company was appointed receiver to take possession of the property and collect rents. The default was on August 20, 1931. It was caused by the wilful neglect and refusal of DeVos, the holding company and the association to pay rentals for the apartments they own; they refused to pay in order to induce foreclosure and, through it, to eliminate plaintiffs' interest in the property and acquire it for themselves. Their conduct made the foreclosure fraudulent and they should account to plaintiffs by reason thereof.

Plaintiffs claim they are necessary parties to the foreclosure proceedings, the proceedings are void and further prosecution should be enjoined; the order appointing the receiver was void and should be vacated because plaintiffs had no notice of the application for it; the order should be vacated because the receiver has permitted the same persons who formerly controlled it to manage the property; the receivership is detrimental to plaintiffs and the bondholders in causing great expense; the trust company is not a proper receiver because it is insolvent and in charge of a conservator who is subject to the jurisdiction of the executive branch of the government, not of the court.

Plaintiffs are informed and believe that the foreclosure suit was engineered by DeVos, the holding company and the association; that the receiver is a friendly one and:

"Plaintiffs are informed and believe and so charge the fact to be that said suit was instituted for the sole purpose of freezing out these plaintiffs of their investment and interest in said Alden Park Manor Apartments, said defendant and said Union Guardian Trust Company having conspired and confederated to cause said property to be sold under foreclosure decree of this court, and thus to enable DeVos and his promoted companies to acquire said properties for themselves. Plaintiffs therefore submit that said foreclosure proceedings are fraudulent, null and void, and that the same should be enjoined."

In furtherance of their scheme to defraud plaintiffs, DeVos, the holding company and the trust company have effected a reorganization of the bond issue, to provide for final decree and sale of the property, to be purchased by the bondholders' committee; formation of a new corporation in which the bondholders take 70/85ths and the association 15/85ths of the stock; present leases to be canceled and new ones offered to present occupants. The plan is detrimental to plaintiffs and other stockholders and should be enjoined.

If the foreclosure proceedings are valid, plaintiffs ask delay under the mortgage moratorium act (Act No. 98, Pub. Acts 1933).

Plaintiffs pray:

(a) That they be decreed to be owners in fee of their apartments.

(b) That DeVos, the holding company and the association account to plaintiffs for their damages caused by their fraud and plaintiffs have a lien on the property therefor.

(c)  That the foreclosure suit be dismissed and the receiver account for all fees and expenses.

(d)  That injunction issue to:

1.  Restrain dispossession of plaintiffs now in possession and to restore those already dispossessed.

2.  Restrain enforcement of notes given by plaintiffs.

3.  Restrain the trustee from further prosecution of foreclosure proceedings.

4.  Restrain collection of rents or budget payments from plaintiffs.

5.  Restrain defendants from withdrawing any moneys from rents or income of the association.

6.  Restrain the reorganization proceedings.

(e)  Benefit of the moratorium act.

The bill was afterwards amended by adding other parties plaintiffs and alleging that, acting as receiver, the trust company has permitted DeVos and the holding company to misappropriate moneys of the association and to be in default in their budget payments; the records in the office of the register of deeds do not show notice of default, under Act No. 228, Pub. Acts 1925 (3 Comp. Laws 1929, §§ 13498, 13499), and no notice was served on plaintiffs; plaintiffs are tenants in common of the property; and they pray accounting of moneys misappropriated and ask lien for the peculations, alleging willingness to pay what they owe if DeVos and the corporations will pay their debts to the association.

Plaintiffs' foundation contention is that all stockholders of the association are joint adventurers, as such are equitable owners in common of the real estate and, therefore, are necessary parties to the foreclosure proceedings.  Alternatively, they con-

tend that the association holds the legal title merely in trust for the stockholders.

Sometimes, when joint adventurers use the corporate form for convenience in carrying out their project, their mutual rights and liabilities will be determined in furtherance of and in harmony with their joint purpose rather than with the form of their operation and the corporate entity will be recognized or ignored accordingly. *Latimer* v. *Piper,* 261 Mich. 123; *Lane* v. *Wood,* 259 Mich. 266. But no cases have been cited nor principles suggested which would enable them to don or doff the corporate garb at their pleasure, for their own benefit, or to the detriment of third parties. 33 C. J. p. 845. If they could do so, corporation law would become "confusion worse confounded" because elements of joint adventure appear in most small corporate undertakings.

In working out the cooperative apartment ownership idea, the parties have a choice of methods. They may adopt the plan of individual ownership and operation, or they may take title in a trustee, or form a corporation. Obviously they must submit to the burdens as well as enjoy the benefits which inhere in the plan they adopt.

Without deciding whether the cooperative apartment plan is a "single business enterprise for profit," *Keiswetter* v. *Rubenstein,* 235 Mich. 36, 45 (48 A. L. R. 1049), or a "special venture" for profit, 33 C. J. p. 841, and, therefore, the subject of joint enterprise, it is plain that the project at bar, as affecting the title to the real estate, is a far cry from joint adventure or trust ownership. There was no community of purpose or trust relationship by plaintiffs and others at its inception. It was instituted as a stock-selling scheme for the individual profit of the holding company and DeVos. In becoming

parties to it, plaintiffs accepted the corporate form of ownership and operation because it already had been formulated. The seller designated the interest in the premises the purchaser should acquire, prepared and executed the muniments of such interest and the purchaser accepted them. The articles of association and the papers specifically constituted the purchaser a lessee of the association and neither purported to, nor did, convey any title to the real estate. Representations by DeVos that the stock and lease constituted an ownership in the premises, if of effect under the circumstances, could bind only DeVos and the holding company. The situation, unequivocally created by the instruments and accepted by the purchasers, is that the association owns the property and plaintiffs are lessees with no more legal or equitable title than have the stockholders in the other corporation. Plaintiffs, as subsequent lessees, are not necessary parties to the foreclosure suit. *Dolese* v. *Bellows-Claude Neon Co.,* 261 Mich. 57.

Plaintiffs claim a lien on the premises for fraud (a) because DeVos misrepresented the value of the association's equity, the lien to be in the amount of the overvaluation, and (b) in the amount of damages for the other frauds.

DeVos and the holding company have no title to the real estate and no lien can attach to it through their fraud.

No fraud is charged against the cooperative association in connection with the original purchase by plaintiffs. Misappropriation of corporate funds by officers is a wrong against the association and all its stockholders, not a wrong for which the corporation itself is liable in damages to its stockholders. The bill does not allege that the association fraudulently received money of plaintiffs which went into the real

estate or is so connected therewith as to support a lien. 37 C. J. p. 320.

As plaintiffs do not ask rescission, their remedy for fraud is an action for damages. Nor, indeed, would a lien imposed after commencement of the foreclosure proceeding make them necessary parties to it. *Union Trust Co. v. C. H. Miles Adams Avenue Corp.*, 247 Mich. 340.

The charge of conspiracy to "freeze out" plaintiffs by foreclosure is not supported by averments of fact, except the general allegation that the trustee permitted DeVos and the holding company to misappropriate moneys of the association instead of paying them on the mortgage and the outline of the plan of reorganization. Plaintiffs contend the trustee owed them a duty of diligence in attempting to collect the mortgage debt and, because it failed in such duty and permitted misappropriation of association funds, they are entitled to have further foreclosure enjoined. They cite no authority for the position and we apprehend it would surprise the profession if a rule were declared that a mortgagee owes to persons interested in the premises a duty of collection on peril of losing his lien or impairing its enforcement.

If the foreclosure was the result of a conspiracy to defraud plaintiffs, they may have an action for damages. 41 C. J. p. 894. Perhaps equity also could grant relief in a proper case. But the bill does not set up facts showing such conspiracy, contains no offer to pay the defaulted instalments and reinstate the mortgage, nor does it point out a fund of the association, DeVos or the holding company which the court may take into its possession and apply on the debt. The bondholders are entitled to payment or foreclosure and no rule of equity would permit enjoining their action until someone voluntarily pays the default. The reorganization plan is sub-

ject to separate attack and does not evidence conspiracy in the foreclosure.

We think the bill fails to state a case entitling plaintiffs to enjoin the foreclosure proceedings.

Charges of misappropriation of association funds in conduct of the receivership, demands for accounting therefor, and use of the moratorium statute are under control of the court in the foreclosure suit.

We also think the bill is multifarious, 3 Comp. Laws 1929, § 13962

1. In joining separate actions by plaintiffs for fraud in their purchases. Although the representations may have been general and identical to each plaintiff, they were personal to each because made at different times and necessarily individually relied upon. Relief would need to take the form of separate judgments in varying amounts. No plaintiff (except as to husband and wife) has any interest in the cause of action of any other plaintiff. *Runciman* v. *Brown,* 223 Mich. 298.

2. Relief granted for misappropriation of association funds would be in the nature of decree on stockholders' bill, wholly different from the personal judgments for fraud.

3. Relief in the above respects would give the plaintiffs no standing to attack the foreclosure proceedings.

4. The actions for fraud, misappropriation and injunction against foreclosure cannot be joined. *Gardella* v. *Babigian,* 263 Mich. 514.

Decree affirmed, with costs and, under 3 Comp. Laws 1929, § 15508, cause remanded with leave to plaintiffs to amend their bill of complaint within 15 days.

NELSON SHARPE, C. J., and POTTER, NORTH, WIEST, BUTZEL, and EDWARD M. SHARPE, JJ., concurred. BUSHNELL, J., did not sit.