S. J. AMOROSO CONSTRUCTION COMPANY, APPELLANT, *v.* LAZOVICH AND LAZOVICH, DBA L AND L ROOFING COMPANY, RESPONDENT.

No. 20532

April 30, 1991                    810 P.2d 775

[Rehearing granted in part August 29, 1991]

*Lionel Sawyer & Collins* and *David N. Frederick,* Las Vegas, for Appellant.

*Robison, Belaustegui, Robb & Sharp,* Reno, for Respondent.

## OPINION

By the Court, ROSE, J.:

S. J. Amoroso Construction Company (Amoroso) was the

general contractor on a project to reconstruct 130 condominium units, called the Tahoe Donner Ski Bowl Condominium Complex (Tahoe/Donner). Lazovich and Lazovich, dba L and L Roofing Company (L&L) subcontracted to reshingle the roofs on the units for $610,000. During the course of construction, a dispute arose over the roofing price. L&L claimed that the project price had become commercially impracticable, and that the parties had reached an accord that Amoroso would pay L&L on a time and materials basis. Amoroso disputed that the parties had agreed to change the original contract price. In addition, Amoroso produced three documents signed by Bob Lazovich, president of L&L, stating that L&L had been paid in full and would not commence an action against Amoroso.

L&L sued Amoroso for breach of contract and fraud. L&L alleged that, (1) initially, Amoroso fraudulently induced it to bid low by misrepresenting the number of roofing shingles required; (2) Amoroso agreed to modify the contract and pay Lazovich on a time and materials basis, and then breached the modified contract by claiming that it was never formed; and (3) the three documents releasing Amoroso from further obligations were not binding because L&L signed them under duress, in fear that Amoroso would withhold payment on other current projects, and with the understanding that it would eventually be paid for the Tahoe/Donner project.

The jury awarded L&L $637,765 in compensatory damages for breach of contract, zero damages for fraud, and $1,000,000 in punitive damages. To clarify the verdict, the court sent the jury the following interrogatory:

> Compensatory damages have been awarded by the Jury on plaintiff's claim for breach of contract.
>
> No compensatory damages have been awarded by the Jury on plaintiff's claim for fraud.
>
> Did you award no damages for plaintiff's claim for fraud
> (a) because you believe plaintiff has already been compensated for fraud in your award for breach of contract,
>
> or
>
> (b) because you believe plaintiff has not proved fraud by clear and convincing evidence.
>
> Please answer (a) or (b).

Whereupon, the jury responded ''(a).'' The court accepted the jury's answer as an indication that it found fraud and entered judgment for Lazovich in the amount of $1,872,869.20, made up of compensatory and punitive damages plus interest and costs.

On appeal, Amoroso asserts that, (1) insufficient evidence was produced at trial to sustain a finding of clear and convincing

evidence of fraud; (2) the court should have stricken the punitive damages award because punitive damages should only be permitted in cases of aggravated fraud, not in cases of simple fraud; (3) the court's interrogatory violated NRS 50.065(2) because it impermissibly invaded the mental processes of the jury, and (4) the punitive damages award was excessive. We conclude that assertions one and two have no merit, that the court's interrogatory was proper, and that the punitive damages award was excessive in light of Amoroso's total assets.

Neither the sufficiency of evidence nor the distinction between simple and aggravated fraud warrant much discussion in this case. At trial, L&L produced several witnesses whose testimony established all the elements of a fraud claim. Therefore, the jury's finding of fraud was not erroneous. In its jury instructions, the court did not distinguish between aggravated fraud and simple fraud, nor did Amoroso request that the court make such a distinction. Since the jury found fraud without a qualifying adjective, it was free to have included punitive damages in its verdict.

## THE INTERROGATORY TO THE JURY

The interrogatory asked the jury to explain a facially contradictory verdict. Amoroso asserts that the question forced the jurors to reveal their mental processes in violation of NRS 50.065(2)(a), which states that,

2. Upon an inquiry into the validity of a verdict or indictment:
(a) A juror shall not testify concerning the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith.

Amoroso suggests that instead of asking the jury how it reached a verdict that was inconsistent with Nevada law, the court should have stricken the inconsistent part. Since the jury awarded zero damages for fraud, the court simply should have stricken the entire punitive damages award.

However, this court has permitted trial courts to ask juries to clarify verdicts. Eberhard Mfg. Co. v. Baldwin, 97 Nev. 271, 628 P.2d 681 (1981) (a court may inform a jury why its verdict is inconsistent and send the verdict back for further deliberation); Novack v. Hoppin, 77 Nev. 33, 359 P.2d 390 (1961). In *Novack,* the jury awarded exemplary damages but no compensatory damages. Without a clarification as to why the jury gave an award that did not comport with legal principles, this court had no choice

but to remand for a new trial. However, we stated that the defect in the award could have been cured if the trial court had returned the verdict to the jury for further consideration. *Id.* at 44, 359 P.2d at 395.

In this case, the trial court faced the same dilemma as in *Novack.* Punitive damages are not available on the count for breach of contract and are precluded in the absence of compensatory damages for the claim sustaining the punitive award. Sprouse v. Wentz, 105 Nev. 597, 781 P.2d 1136 (1989) (punitive damages award stricken when plaintiff never pleaded a claim sounding in tort). This jury found fraud which resulted in damages to L&L. However, the verdict contained no fraud damages because the jury determined that the breach of contract damages adequately compensated for the fraud. Under these circumstances, punitive damages are statutorily permissible.[1]

Consequently, the time to determine whether a verdict is inconsistent with Nevada law is before the court dismisses the jury. The interrogatory posed in this case did not ask the jurors to reveal how they reached their decision. Instead, it simply asked what they meant by a verdict which they could have arrived at by two different methods. Since one of those methods was statutorily permissible but the other was not, it was incumbent upon the trial court to determine what the jury intended by its verdict. The trial court's interrogatory is exactly what we suggested in *Novack.* The inquiry cured the inconsistency in the verdict, and saved the case from requiring a new trial.

## THE AMOUNT OF THE PUNITIVE DAMAGES AWARD

We evaluate an award of punitive damages in light of a non-exhaustive list of factors set out in Ace Truck v. Kahn, 103 Nev. 503, 746 P.2d 132 (1987). Two factors included in this list are the culpability and the financial position of the tortfeasor. *Id.* at 510, 746 P.2d at 137. Amoroso asserts that its net worth is $3,000,000, and therefore this judgment will cut its assets by almost two-thirds.

In *Ace Truck,* two tortfeasors made false representations upon the sale of their business to the plaintiffs. Each defendant's net worth was $1,626,000 and $705,700, and the punitive damage

---

[1] NRS 42.010 provided for the type of punitive damages awarded in this case at the time this cause of action arose, and NRS 42.005 provides for this type of punitive damages as of 1989.

awards were $500,000 and $300,000, respectively. Although we sustained the jury's finding of fraud, we opined that the degree of culpability was not extravagant. *Id.* at 511, 746 P.2d at 137. Therefore, we cut each punitive damage award in half.

The fraud alleged in *Ace Truck* is similar to the fraud alleged here. In both cases, the defendants made false business representations to procure a more beneficial contract for themselves. Also in both cases, the punitive damage awards equalled approximately one-third of the defendant's net worth. Therefore, we conclude that the punitive damages awarded in this case should be cut in half, from $1,000,000 down to $500,000. Punitive damages are intended to punish, not to destroy. We thereby reduce the award in this case to achieve a result consistent with that objective.

MOWBRAY, C. J., SPRINGER, STEFFEN and YOUNG, JJ., concur.