*1091
 
 OPINION
 

 Per Curiam:
 

 This is an appeal from a judgment pursuant to a jury verdict for plaintiff-respondent in the amount of $470,942.17 for breach of contract and breach of fiduciary duty. Defendants-appellants assign several of the district court rulings as error. We affirm the district court’s judgment.
 

 FACTS
 

 Robert Clark, M.D., Alan Feld, M.D., Joel Lubritz, M.D., Jack Hirsh, M.D., and Armand Scully, M.D. specialized in different areas of medicine. In 1983, they formed a preferred provider organization called Nevada Preferred Professionals (NPP).
 

 They agreed orally that they would each initially invest $15,000 in NPP. Lubritz testified that they agreed to share any profits or losses equally and that if necessary, each would be liable for another $10,000.
 
 [1]
 

 Soon after making their initial agreement, the five doctors opted to incorporate NPP. On June 30, 1983, Lubritz signed the sixty-day list of NPP’s officers, directors and agent. He listed himself as president and each founder as a director. He also represented that NPP’s stockholders owned $2,500 of NPP common stock, but testified at trial that he did not think stock was ever actually issued to anyone.
 

 The corporation’s articles of incorporation were filed and the five doctors adopted bylaws.
 
 [2]
 
 However, Lubritz testified on direct examination that incorporating did not alter their original agreement to share profits and losses equally even though NPP “actu
 
 *1092
 
 ally started business after the corporation was formed.” He claims that NPP was incorporated for tax and legal reasons only. He also claims that all of the doctors continued to refer to each other as partners. In fact, at trial, both Scully and Dr. Elias Ghanem testified that after NPP was incorporated, the five physicians asked Ghanem to be a partner and share equally. Although Ghanem originally accepted the offer, he left NPP when he was told that he could not be on the board, but could still receive an equal share because he put in an equal share.
 

 John Busse became NPP’s first executive director in June of 1983. Busse testified that he “learned that the physicians are all equal partners, put the same amount in, and were going to be paid or receive the same benefits.” He also testified that Dr. Clark introduced Dr. Scully to him as “one of our partners.” Finally, each of the five physicians received an equal year-end distribution characterized as a “consultation fee” during NPP’s first six years of operation.
 

 Lubritz testified that he, Feld and Clark initially took special interest in the day-to-day running of the business. In fact, Scully testified that Lubritz worked “like a dog,” clearly harder than anyone else in the early years.
 
 [3]
 
 However, testimony indicated that running the business was a team effort because Hirsh and Scully contributed highly respected reputations.
 

 In 1986, the doctors began to develop serious differences of opinion regarding the way NPP’s benefit plan should be sold. On August 25, 1986, Lubritz tendered his resignation from the board in an effort to impress upon the others the gravity of his feelings. Specifically, he resigned from the board of directors and as president, and anticipated “just being a stockholder.” Lubritz claims, and the other doctors agree, that he continued to perform limited services for NPP after his resignation from the board.
 

 In 1986, 1987, 1988, and 1989, Scully, Feld, Hirsh and Clark (hereinafter referred to as “the appellants”) continued to equally divide the year-end proceeds with Lubritz. However, in 1990, the appellants fixed a higher payment for each of themselves and a lower payment for Lubritz. The appellants, after consulting the bylaws, opted not to inform Lubritz that his share was significantly less than theirs.
 
 [4]
 
 Likewise, in 1991 and 1992 the four appellants received higher year-end payments than did Lubritz.
 

 
 *1093
 
 In early 1993, Lubritz learned that his payments were smaller and on March 4, 1993, he filed a complaint against Scully, Hirsh, Clark, and Feld for one-fifth of the total payments less the amount he had already received. With the lawsuit pending, the board again distributed the 1993 earnings unequally. This payment was accompanied by a letter which informed Lubritz that this “payment will be the last based on the contributions in terms of time and energy in the formative years.” The appellants claim that the equal distributions were compensation for Lubritz’s extreme contributions in the early years, while the lesser payments reflected Lubritz’s lesser contributions in the latter years.
 

 Lubritz claims that the appellants ignored several sections of their bylaws. Stocks were not issued, annual shareholders meetings were not held, and officers and directors were not elected. Lubritz testified that to form the corporation, Clark went to the attorney’s office and simply filled in officers’ names. Further, he testified that the parties did not use the bylaws in operating NPP. Feld testified that although they were not lawyers, they tried to do things as much as possible within the confines of the bylaws.
 

 On February 1, 1991, the Secretary of State of Nevada revoked NPP’s corporate charter for failure to file its annual list of officers and directors pursuant to NRS 78.175. Apparently, Dr. Clark, as resident agent, failed to file the list. On September 2, 1993, the charter was reinstated.
 

 The jury returned a verdict in favor of Lubritz. They awarded a single sum, $195,942.17, in compensatory damages for both breach of contract and breach of fiduciary duty, $200,000 in punitive damages, and $75,000 in attorney’s fees. The appellants unsuccessfully moved for judgment notwithstanding the verdict, and this appeal ensued.
 

 DISCUSSION
 

 Breach of Contract
 

 The appellants argue that the district court judge erroneously allowed the jury to find a breach of the oral agreement because it is legally impermissible for a business to be conducted as a corporation and a partnership at the same time. They claim that the incorporation of NPP necessarily precludes Lubritz from recovering for breach of contract.
 
 [5]
 
 We disagree.
 

 This court determines questions of law de novo. City of Reno v. Van Ermen, 79 Nev. 369, 381, 385 P.2d 345, 351 (1963).
 
 *1094
 
 Although this court has not yet addressed this issue, courts in other states are of the opinion that “when joint adventurers use the corporate form for convenience in carrying out their project, their mutual rights and liabilities will be determined in furtherance and in harmony with their joint purpose rather than with the form of their operation, and the corporate entity will be recognized or ignored accordingly.” Shafer v. Eighty-One Hundred Jefferson Avenue E Corporation, 255 N.W. 324, 327 (Mich. 1934);
 
 accord
 
 Wabash Ry. Co. v. American Refrigerator Transit Co., 7 F.2d 335, 343-44 (8th Cir. 1925) (courts will ignore form to discern the real intent of individuals forming the organization, and, if no third parties are involved, will give effect to the real purpose of the organization in order to promote square dealing and effectuate justice); Denny v. Guyton, 40 S.W.2d 562, 570 (Mo. 1931) (joint venture agreement providing for division among partners of those profits realized from the operation of their corporation did not unlawfully encroach on corporation’s power); Seaboard Airline Company v. Atlantic Coastline Co., 82 S.E.2d 771, 782-83 (N.C. 1954) (settlement of disputes among shareholders of joint venture company is to be decided against the background of their agreement as joint venturers and not necessarily by reference to ordinary corporate practices).
 

 Additionally, although not in effect when the parties entered the oral agreement, Chapter 78A of the Nevada Revised Statutes is consistent with Nevada law at that time.
 

 NRS 78A.070 states:
 

 1. All shareholders of a close corporation who are entitled to vote may agree in writing to regulate the exercise of the corporate powers and the management of the business and affairs of the corporation or the relationship among the shareholders of the corporation.
 

 2. An agreement authorized by this section is effective even if the agreement:
 

 (c) Treats the corporation as a partnership.
 

 In addition, NRS 78A.080 provides:
 

 A written agreement among stockholders of a close corporation . . . that relates to any phase of the affairs of the corporation ... is not invalid on the ground that it is an attempt by the parties to the agreement ... to treat the corporation as if it were a partnership or to arrange relations among the stockholders or between the stockholders and the corporation in a manner that would be appropriate only among partners.
 

 
 *1095
 
 While NRS 78A.080 requires that the agreement be in writing, “[t]here is a general presumption in favor of prospective application of statutes.” McKellar v. McKellar, 110 Nev. 200, 203, 871 P.2d 296, 298 (1994). Therefore, the parties in this case are not subject to the writing requirement of NRS 78A.080 because in 1983 they had no notice of such a requirement. Based on the foregoing, we hold that the oral agreement was not invalid per se when the parties formed the corporation. Thus, the district court properly allowed the jury to determine whether the parties breached the oral agreement.
 

 This court will not disturb a jury’s verdict if it is supported by substantial evidence. Steen v. Gass, 85 Nev. 249, 253, 454 P.2d 94, 97 (1969). Lubritz testified that all five physicians expressly agreed to divide the year-end profits or losses equally. Further, Ghanem testified that the five physicians asked him to join NPP and share the year-end profits equally even after NPP was incorporated. In addition, there was testimony that the parties continued to refer to their relationship as that of partners after NPP was incorporated. During the first six years of operation, the parties distributed the profits equally in accordance with the oral agreement. Lastly, there was testimony that the bylaws were not used in the operation of NPP. Therefore, because there is ample evidence in the record to support a finding that the parties intended the oral agreement to control the manner in which the five physicians were paid by the corporation, this court will not disturb the jury’s finding that the appellants breached that agreement when they reduced Lubritz’s payments to less than one-fifth.
 

 Breach of Fiduciary Duty
 

 The appellants also argue that there was no evidence that they breached a fiduciary duty in not disclosing the unequal distributions to Lubritz.
 

 The fiduciary duty that partners owe one another has been described as follows:
 

 The fiduciary duty among partners is generally one of full and frank disclosure of all relevant information for just, equitable and open dealings at full value and consideration. Each partner has a right to know all that the others know, and each is required to make full disclosure of all material facts within his knowledge in anything relating to the partnership affairs. The requirement of full disclosure among
 
 *1096
 
 partners in partnership business cannot be escaped. . . . Each partner must . . . not deceive another partner by concealment of material facts.
 

 59(A) Am. Jur. 2d
 
 Partnership
 
 § 425 (1987). In addition, a partner’s motives or intent do not determine whether his actions violate his fiduciary duty.
 
 Id.
 
 at § 423. Therefore, the appellants owed Lubritz a fiduciary duty of full disclosure of material facts relating to the partnership affairs.
 

 In this case, there was sufficient evidence to show that the appellants breached that duty. The evidence clearly indicated that the appellants did not disclose the unequal distribution. Moreover, as discussed more fully above, there is sufficient evidence upon which a jury could determine that the appellants desired to conceal the unequal distribution from Lubritz. Therefore, this court will not disturb the jury’s award for breach of fiduciary duty.
 

 Punitive Damages
 

 Under NRS 42.005, punitive damages may be awarded in an action “not arising from contract,” where it is proven by clear and convincing evidence that “the defendant has been guilty of oppression, fraud or malice, express or implied.”
 

 Appellants argue that even if they breached their fiduciary duty, any injury claimed to have arisen out of tort arose solely out of a contractual relationship and, therefore, cannot be the predicate for a punitive damage award.
 

 In Nissho-Iwai Co., Ltd. v. Occidental Crude Sales, 729 F.2d 1530 (5th Cir. 1984), a federal diversity case governed by California law, the Fifth Circuit reversed a punitive damages award based on fraud in the performance of a contract, stating:
 

 One may not recover punitives for misrepresentation made in the performance of a contract. . . . The plaintiff must prove that his injuries actually resulted from the fraud and not from the breach of the . . . contract. The injuries must be
 
 entirely separate
 
 from those suffered because of breach. Otherwise, there is too great a danger that [plaintiff] is using injuries resulting from the breach [of contract] as a basis for tacking on punitive damages.
 

 Id.
 
 at 1550 (citing Crogan v. Metz, 303 P.2d 1029, 1033 (Cal. 1956); Cal. Civ. Code § 3294 (California Punitive Damages Statute)) (emphasis added).
 
 [6]
 

 
 *1097
 
 The appellants claim that the tort injuries were not “entirely separate” from the contract injuries because
 

 the jury verdicts awarded identical amounts of compensatory damages for alleged breach of contract and alleged breach of fiduciary duty .... There was no evidence of any distinct tort injury, and the identical amounts awarded by the jury are exactly what plaintiff requested in his summation. . . . Therefore, punitive damages are precluded.
 

 In this case, the jury was instructed that if it found “plaintiff has met his burden of proof on more than one theory of recovery, plaintiff would still only be entitled to a single sum of damages. Plaintiff would not be entitled to double or triple recovery or any other form of compound damages.” The jury was also instructed that if it found there was a breach of fiduciary duty and awarded compensatory damages in some amount against the appellants, then it was to determine whether there should also be an award for punitive damages.
 

 The jury found that the appellants were liable for breach of contract and awarded compensatory damages in the amount of $195,942.17. The jury also found that the appellants breached their fiduciary duty to Lubritz, and again awarded compensatory damages in the amount of $195,942.17. The jury awarded Lubritz $200,000 in punitive damages.
 

 In Amoroso Constr. v. Lazovich and Lazovich, 107 Nev. 294, 810 P.2d 775 (1991), Lazovich sued Amoroso for breach of contract and for fraud. The jury awarded punitive damages, compensatory damages for breach of contract, and nothing for fraud. The jury found that the plaintiff was adequately compensated for fraud in the award for breach of contract.
 
 Id.
 
 at 296, 810 P.2d at 777.
 

 On appeal, this court stated the following:
 

 This jury found fraud which resulted in damages to L&L. However, the verdict contained no fraud damages because the jury determined that the breach of contract damages adequately compensated for the fraud. Under these circumstances, punitive damages are statutorily permissible.
 

 Id.
 
 at 298, 810 P.2d at 777-78.
 

 As in
 
 Amoroso,
 
 the jury here awarded a single sum to compensate Lubritz for both breach of contract and breach of fiduciary
 
 *1098
 
 duty, apparently because the jury was instructed that Lubritz may not recover more than he actually lost under the agreement.
 

 The appellants argue that
 
 Amoroso
 
 is not controlling because this court did not expressly decide the “entirely separate injury” issue raised in
 
 Nissho-Iwai.
 
 They claim that where a fiduciary duty arises out of a contract, the injuries must necessarily be intertwined and punitive damages are inappropriate.
 

 Although not discussed in
 
 Amoroso,
 
 this court has made such a determination in Topaz Mutual Co. v. Marsh, 108 Nev. 845, 839 P.2d 606 (1992). There, we stated:
 

 A plaintiff may assert several claims for relief and be awarded damages on different theories. It is not uncommon to see a plaintiff assert a contractual claim and also a cause of action asserting fraud based on the facts surrounding the contract’s execution and performance. . . . The measure of damages on claims of fraud and contract are often the same.
 

 Id.
 
 at 851-52, 839 P.2d at 610. We went on to say that the plaintiff “is not permitted to recover more than her total loss plus any punitive damages assessed.”
 
 Id.
 
 Our position in
 
 Topaz
 
 is exactly contrary to the one expressed in
 
 Nissho-Iwai,
 
 where the court explicitly held that punitive damages for fraud in the performance of a contract are not recoverable.
 

 More on point and in accord with
 
 Topaz,
 
 is Washington Medical Center v. Holle, 573 A.2d 1269 (D.C. Ct. App. 1990). In an action between members of a partnership, that court stated:
 

 Despite the contractual source of partners’ duties
 
 inter se,
 
 ... it is well established that when a fiduciary duty exists between the parties, and the conduct complained of constitutes a breach of that duty, the claim sounds in tort regardless of the contractual underpinnings.
 

 Id.
 
 at 1284 n.24 (quoting Wagman v. Lee, 457 A.2d 401, 404 (D.C. 1983)).
 
 [7]
 
 Therefore, we conclude that the breach of fiduciary duty arising from the partnership agreement is a separate tort upon which punitive damages may be based.
 

 Malice
 

 Appellants argue that, as required by NRS 42.005, there is no
 
 *1099
 
 clear and convincing evidence of oppression, fraud or malice and that, therefore, the punitive damages award must be set aside.
 

 Under NRS 42.001(3), “express malice” is “conduct which is intended to injure a person”; “implied malice” is “despicable conduct which is engaged in with a conscious disregard of the rights ... of others.” Lubritz did present clear and convincing evidence of express malice at trial. In this case, there is strong evidence that a conscious decision was made not to inform Lubritz about the decision to reduce Lubritz’s share. For many years appellants “pocketed as profit,” a disproportionate distribution, by reducing Lubritz’s share and not telling him about the reduction. In addition, appellants concede that the decision not to inform Lubritz of the unequal year-end distribution was “not unconscious or accidental.”
 

 Further evidence of intent to injure Lubritz is found in the appellants’ testimony. Scully testified:
 

 Dr. Hirsh asked me my opinion, and my opinion was that Dr. Lubritz should be called in and told what was going on, and that might stimulate him to come back on the board or something of that nature. . . . [Dr. Hirsh] thought maybe that might be a good idea. . . . Dr. Feld and Dr. Clark didn’t feel like there was any responsibility to do that.
 

 Clark also testified that Scully was concerned that nondisclosure would cause a problem. Clark claims that their conversation proceeded as follows:
 

 I said — and we better tell him. And I said: Are you going to tell him? And [Scully] said: Not me. And I said: Do you want me to tell him? And the answer to that was: You can if you want.
 

 We conclude that the foregoing is sufficient evidence upon which to base a finding of express malice — that the appellants acted with the intent to injure Lubritz.
 

 Even if there were not clear and convincing evidence of intent to injure, there is certainly clear and convincing evidence here of
 
 implied
 
 malice in the form of “despicable conduct” accompanied by a “conscious disregard of the rights” of Lubritz.
 

 Because there is ample evidence to support a punitive damage judgment based on malice, we do not consider it necessary to discuss fraud or oppression. We therefore affirm the punitive damage award.
 

 Attorney’s Fees
 

 “[A]ny party may serve upon the adverse party an offer to
 
 *1100
 
 allow judgment... for ... the offer .... If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree shall not recover . . . attorneys’ fees, but shall pay the costs and attorneys’ fees ... of the party making the offer from the time of the offer.” NRCP 68.
 

 In November 1993, Lubritz served each defendant with an offer of judgment for $25,200 (totalling $100,800). Because Lubritz’s damages for 1993 and 1994 had not accrued at the time of the offers, his complaint did not yet ask for those damages.
 

 The jury subsequently determined that Lubritz was entitled to $26,400 in damages for 1990, $36,000 for 1991, $34,400 for 1992, $34,400 for 1993, and $64,742.17 for 1994 (totalling $195,942.17). The district court then granted Lubritz’s motion for attorney’s fees because the final judgment obtained by the plaintiff exceeded the offers served.
 

 The appellants argue that the judgment obtained for 1990, 1991 and 1992 (the only years pleaded at the time of the offers) totalled $96,800 and did not exceed the sum of the four offers served, or $100,800. Accordingly, they argue that under NRCP 68, Lubritz “shall not recover . . . attorney’s fees.”
 

 In Lutynski v. B.B. & J. Trucking, Inc., 628 A.2d 1 (Conn. Ct. App. 1993), the plaintiff gave the defendant an offer of judgment for $95,000, which was not accepted. Thereafter, plaintiff amended his complaint and alleged additional damages. The jury awarded plaintiff $150,000. When the plaintiff moved for attorney’s fees and costs, the defendant argued that the amount of judgment obtained was attributable to facts and increased damages alleged after the initial offer of judgment had expired. In rejecting this argument, the court stated:
 

 An offer of judgment is an offer to settle the entire case, including claims both known and unknown and both certain and uncertain. Obviously, if injuries worsen as time passes, damages will increase, and if injuries mend, the damages will decrease. These are the vagaries of offers of settlement.
 

 Id.
 
 at 5.
 

 Lubritz’s four offers were offers to settle the entire case, including uncertain future claims. Certainly, a settlement resulting from an early offer of judgment would have released all liability in the case. NRCP 68 also requires such a result where it calls for the judge to consider the “judgment finally obtained” in determining whether attorney’s fees are appropriate. Therefore, the district court judge did not err in awarding attorney’s fees to Lubritz.
 

 
 *1101
 
 The district court’s judgment in favor of Lubritz is hereby affirmed.
 

 Springer, Rose, and Young, JJ., and Gamble, D. J., concur.
 
 [8]
 

 [1]
 

 Although Clark denied entering into any oral agreement, all other appellants admit that the initial agreement was oral. Furthermore, they seem to agree with Lubritz’s testimony regarding the agreement.
 

 [2]
 

 The bylaws in evidence are a draft copy. However,- when asked in his deposition whether that draft appeared to be the adopted bylaws, Lubritz answered, “I would say, yes.”
 

 [3]
 

 Lubritz testified that in 1985, Feld raised the issue of unequal distribution of profits because Lubritz, Clark and Feld were doing more work than Hirsh and Scully. However, Lubritz opposed the idea because it violated the parties’ agreement to share any profits or losses equally. Feld and Clark agreed and the topic was set aside.
 

 [4]
 

 Feld claims that under the bylaws, they had no duty to report a reduction in director compensation. In 1990, Lubritz received $25,000 while each of the other four doctors received $58,000.
 

 [5]
 

 The essence of appellants’ argument is that NRS 78.115 allows a corporate board to set director compensation. Therefore, Clark, Feld, Hirsh and Scully acted within their authority as directors in reducing Lubritz’s “compensation” when his contributions to NPP declined.
 

 [6]
 

 “Nevada’s statute on punitive damages is a verbatim copy of the California punitive damages statute .... [W]e have adhered to the rule of statutory
 
 *1097
 
 interpretation that when a statute is derived from a sister state, it is presumably adopted with the construction given it by the highest court of the sister state.” Craigo v. Circus-Circus Enterprises, 106 Nev. 1, 3, 786 P.2d 22, 23 (1990).
 

 [7]
 

 Accord
 
 Froemming v. Gate City Federal Sav. and Loan Ass’n, 822 F.2d 723 (8th Cir. 1987) (affirming punitive damage award for breach of fiduciary duty arising out of parties’ contractual relationship as partners); PSG Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 417 F.2d 659 (9th Cir. 1969) (under Oregon law punitive damages may be allowed when a breach of contract merges with a breach of fiduciary duty); Brown v. Coates, 253 F.2d 36 (D.C. Cir. 1958) (punitive damages may be allowed for breach of agent’s fiduciary duty under contract).