Filed 5/29/24

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| ARASELY SOTO et al., | |
| Petitioners, | E081902 |
| v. | (Super.Ct.No. CVRI2102358) |
| THE SUPERIOR COURT OF RIVERSIDE COUNTY, | OPINION |
| Respondent; | |
| STATE TEACHERS' RETIREMENT SYSTEM, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for writ of mandate. Daniel A. Ottolia, Judge. Petition denied.

Law Offices of Russell G. Petti and Russell G. Petti for Petitioners.

Klinedinst, Natalie P. Vance, Robert M. Shaughnessy, and Kaleigh E. Thomas, for Real Party in Interest.

No appearance for Respondent.

1

Arasely Soto was injured during a routine medical procedure and had to retire from her job as a public school teacher. She sued her medical providers for medical malpractice and also sought disability retirement benefits from the California State Teachers' Retirement System (CalSTRS). She and her husband, Raul Soto, settled with several of the medical malpractice defendants. (We occasionally refer to the Sotos by their first names for the sake of clarity. No disrespect is intended.)

CalSTRS brought this action against the Sotos, seeking to enforce its right to subrogation or reimbursement. The complaint alleges that CalSTRS is entitled to be reimbursed for Arasely's disability benefits from her settlement with the malpractice defendants. CalSTRS moved for summary adjudication on its declaratory relief cause of action, and the Sotos moved for summary judgment. In connection with both motions, the Sotos argued that Civil Code section 3333.1 bars any subrogation claim that CalSTRS would have asserted against the malpractice defendants. (Unlabeled statutory citations are to this code.) Subdivision (a) of section 3333.1 "authorizes a defendant in a medical malpractice action to introduce evidence of a variety of 'collateral source' benefits—including health insurance, disability insurance or worker's compensation benefits. Apparently, the Legislature's assumption was that the trier of fact would take the plaintiff's receipt of such benefits into account by reducing damages." (*Barme v. Wood* (1984) 37 Cal.3d 174, 179 (*Barme*).) Subdivision (b) of the statute "provides, in turn, that '[n]o source of collateral benefits introduced pursuant to subdivision (a) shall recover any amount against the plaintiff nor *shall* it be *subrogated to the rights of a plaintiff against a defendant*.'" (*Barme*, at pp. 179-180.)

The trial court granted CalSTRS's motion and denied the Sotos' motion. The court concluded that CalSTRS was entitled to seek reimbursement from the Sotos and rejected the Sotos' section 3333.1 defense.

The Sotos filed this petition for writ of mandate asking us to vacate the trial court's orders. They argue that CalSTRS cannot assert a statutory reimbursement claim against them and that any equitable claim is barred by section 3333.1. In opposition, CalSTRS argues that (1) it has a statutory reimbursement claim against the Sotos, (2) as a matter of law section 3333.1 does not apply to its claim, and (3) in the alternative, even if section 3333.1 could apply in principle, there is no evidence to support application of section 3333.1 in this case.

We agree with CalSTRS's first and third points: CalSTRS has a statutory reimbursement claim against the Sotos, and the evidence in this case does not support application of section 3333.1 to bar CalSTRS's claim. We accordingly express no opinion on the parties' legal arguments concerning the applicability of section 3333.1 in general. Because the Sotos' section 3333.1 defense is factually unsupported, we deny the writ petition.

## BACKGROUND

I. *Arasely's Injury, the Malpractice Action, and Her Disability Benefits*[1]

Arasely was a teacher at an elementary school in the Beaumont Unified School

---

[1] The parties stipulated to a set of facts for purposes of CalSTRS's motion for summary adjudication and the Sotos' motion for summary judgment. Our factual summary is drawn from those stipulated facts.

District. She is a member of CalSTRS and its defined benefit program. In March 2015, Arasely suffered a cerebral artery stroke during a routine medical procedure at San Gorgonio Memorial Hospital (the hospital). The stroke resulted in a brain injury and other physical and cognitive impairments. Dr. Devin Borna was one of Arasely's treating physicians.

In July 2015, the Sotos filed a malpractice action against the hospital, Dr. Borna, and others. Raul brought the action in his individual capacity and as guardian ad litem for Arasely.

The medical malpractice complaint alleged causes of action for negligence and loss of consortium. The complaint sought compensatory damages for lost wages and lost earning capacity, hospital and medical expenses, and general damage.

Dr. Borna served a subpoena on CalSTRS in March 2017. The subpoena sought the production of "[a]ny and all records regarding [Arasely's] pension benefits." CalSTRS responded the following month by producing the requested documents. It also sent a letter to Arasely's counsel in the malpractice action informing counsel that CalSTRS was complying with the subpoena.

The Sotos attended a CalSTRS benefits planning session in January 2018. CalSTRS gave them information and documents about applying for disability benefits. The documents explained CalSTRS's "[r]ight of subrogation" as follows: "[I]f you pursue a claim against a third party for the same impairment that entitles you to a disability benefit from CalSTRS, you must notify us. This is true even if the claim has not yet resulted in a court action. [¶] CalSTRS has the right to participate in the claim by

4

filing our own action against the responsible party, intervening in your claim, or filing a lien against any judgment you may recover. [¶] If you don't notify CalSTRS and you recover—or have already recovered—a monetary sum from the third party, you may be required to reimburse CalSTRS for part of the costs of your disability benefit."

One day after the Sotos' benefits planning session with CalSTRS, they released their claims against Dr. Borna in exchange for a six-figure settlement.

Ten days later, Arasely filled out an application for disability benefits. Her application stated that her injuries were caused by employees of the hospital, including Dr. Borna. CalSTRS acknowledged receipt of Arasely's application for disability benefits in February 2018. That same day, the court in the malpractice action granted the Sotos' request to dismiss Dr. Borna from the lawsuit.

CalSTRS asked Arasely for documents to substantiate her claim for disability benefits in February and May 2018, and she responded by producing over 1,600 pages of documents.

In May 2018, the Sotos released their claims against the hospital in exchange for a seven-figure settlement. Eight days later, the Sotos dismissed the malpractice action with prejudice.

CalSTRS approved Arasely's application for disability benefits in late June 2018. CalSTRS learned of the Sotos' settlements with the hospital and Dr. Borna after it had approved Arasely's application.

II. *CalSTRS's Complaint and the Motions for Summary Adjudication and Summary Judgment*

CalSTRS brought this action against the Sotos in May 2021. The complaint alleges that CalSTRS has a right of subrogation against the malpractice defendants because they caused Arasely's disabling injuries, but the Sotos deprived CalSTRS of that right by failing to notify it of the malpractice action and the settlements and failing to obtain CalSTRS's consent to the settlements. The complaint further alleges that because of the Sotos' failures, CalSTRS is entitled to reimbursement directly from the Sotos. On that basis, the complaint alleges eight causes of action, including statutory subrogation (Ed. Code, §§ 24500, 24502), equitable subrogation, breach of contract, constructive trust, declaratory relief, offset, breach of statutory duties, and breach of quasi-contract.

CalSTRS moved for summary adjudication on its cause of action for declaratory relief and to resolve an issue of duty. It sought a declaration that it was entitled to statutory and equitable subrogation from the Sotos or a ruling that the Sotos had a duty to reimburse CalSTRS for Arasely's disability benefits. CalSTRS argued that Education Code section 24500 generally gave it a right of subrogation against third-party tortfeasors who caused a member's disabling injury, but it was entitled to reimbursement from the injured member if the member settled with the tortfeasors without prior notice to CalSTRS. CalSTRS further argued that it had an equitable right of subrogation from the Sotos to prevent them from receiving a double recovery for Arasely's injuries.

In addition, CalSTRS argued that its reimbursement claim was not barred by section 3333.1. CalSTRS argued that section 3333.1 did not apply in this case for three

6

reasons: (1) CalSTRS was not a source of collateral benefits for purposes of section 3333.1; (2) Arasely's disability retirement benefits were never introduced as evidence in the malpractice action; and (3) the statutes governing CalSTRS's right of subrogation were enacted after section 3333.1, and the later-enacted statutes prevailed.

The Sotos moved for summary judgment on the complaint. In relevant part, they argued that Education Code sections 24500 and 24502 authorized CalSTRS to recover from third-party tortfeasors who injured Arasely, but the sections did not authorize recovery from the Sotos. They additionally argued that section 3333.1's bar on subrogation or reimbursement applied in this case. Raul's declaration in support of their summary judgment motion stated that he filled out Arasely's application for disability benefits with the assistance of counsel, and he wrote in the application that employees of the hospital, including Dr. Borna, had caused Arasely's injuries. He did not know that CalSTRS needed more information. But if CalSTRS had asked for any other information about the litigation, the Sotos would have given it to them.

The trial court granted CalSTRS's motion for summary adjudication on the declaratory relief cause of action and denied the Sotos' motion for summary judgment. As to CalSTRS's motion, the court ruled that CalSTRS had a statutory right to seek reimbursement from the Sotos under Education Code sections 24500 and 24502, because the Sotos had settled with the malpractice defendants without notice to CalSTRS. The court further determined that section 3333.1 did not bar CalSTRS's subrogation or reimbursement claim. The court reasoned that Arasely's disability retirement benefits were not a collateral source for purposes of section 3333.1, and no evidence of her

7

disability retirement benefits was introduced in the malpractice action. In addition, the Legislature enacted the relevant Education Code sections nearly 20 years after section 3333.1, so the Education Code sections prevailed. The court thus ruled that CalSTRS was entitled to "a declaration that CalSTRS may exercise its statutory right of subrogation directly against" the Sotos.

As to the Sotos' summary judgment motion, the court ruled that the motion failed on procedural grounds, because the Sotos failed to address all causes of action in the complaint, and they had not requested summary adjudication in the alternative. The court also denied the motion on the merits for the reasons stated in the order granting CalSTRS's motion.

The Sotos filed the instant petition requesting that we issue a writ of mandate directing the trial court to vacate its summary adjudication and summary judgment orders. They ask us to direct the court to "render new and different orders recognizing" that section 3333.1 bars CalSTRS's reimbursement claim. We issued an order to show cause and stayed proceedings in the trial court.

STANDARD OF REVIEW

A plaintiff moving for summary adjudication on a cause of action bears the burden of proving each element of the cause of action. (Code Civ. Proc., § 437c, subd. (p)(1); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849.) A defendant moving for summary judgment must show that one or more elements of the causes of action cannot be established or that there is a complete defense to the causes of action. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, at p. 849.) Once the moving party carries their

8

burden, the burden shifts to the opposing party "to show that a triable issue of one or more material facts exists as to the cause of action or a defense thereto." (Code Civ. Proc., § 437c, subd. (p)(1), (2).) The trial court may grant the motion if there is no triable issue of material fact and the issues raised by the pleadings may be decided as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Biancalana v. T.D. Service Co.* (2013) 56 Cal.4th 807, 813.) We review the court's summary adjudication and summary judgment orders de novo and apply the same standard as the trial court. (*Travelers Property Casualty Co. of America v. Superior Court* (2013) 215 Cal.App.4th 561, 574.)

DISCUSSION

The Sotos argue that the Education Code sections on which CalSTRS relies do not authorize a reimbursement claim against the Sotos as opposed to the third-party tortfeasors who injured Arasely. They contend that CalSTRS's claim therefore must be equitable in nature and not statutory, and section 3333.1 bars any claim for equitable subrogation or reimbursement. We reject both arguments. The Education Code authorizes CalSTRS to seek reimbursement from the Sotos directly, and the undisputed facts do not support application of section 3333.1 to bar CalSTRS's reimbursement claim.

I.      *CalSTRS's Right of Reimbursement Against the Sotos Under the Education Code*

"'Subrogation, a legal fiction, is broadly defined as the substitution of one person in the place of another with reference to a lawful claim or right. It is a right which is purely derivative and it permits a party who has been required to satisfy a loss created by a third party's wrongful act to step into the shoes of the loser and pursue recovery from

9

the responsible wrongdoer.'" (*State Bar of California v. Statile* (2008) 168 Cal.App.4th 650, 662.) Statutory subrogation, "'as its name suggests, arises by an act of the legislature that vests a right of subrogation with a party or category of parties, and it is governed by the terms of the statute under which it is claimed as a matter of statutory construction.'" (*Id.* at pp. 662-663.)

Education Code section 24500 grants CalSTRS "a right of subrogation" for the amounts CalSTRS "paid and became obligated to pay as disability retirement allowances, disability allowances, family allowances, or survivor benefit allowances." (Ed. Code, § 24500; see Ed. Code, § 22174.) More specifically, if CalSTRS becomes obligated to pay a disability retirement allowance for the injury of a member, and the member's injury "is the proximate consequence of the act of a third person or entity, other than the member's employer," then "the board may recover from that person or entity on behalf of the plan."[2] (Ed. Code, § 24500.) The board may recover "an amount equal to the actuarial equivalent of benefits [CalSTRS] paid and became obligated to pay under the plan because of the injury to or death of the member less any amounts [CalSTRS] may be obligated to pay under the plan without regard to the actions of the third party." (*Ibid.*)

To exercise its right of subrogation, CalSTRS or its agent "may commence or prosecute actions, file liens, intervene in court proceedings, join parties to the action and consolidate actions all in the same manner and to the same extent provided in Chapter 5

---

[2] The "board" and the "plan" refer to the Teacher's Retirement Board and the State Teachers' Retirement Plan, respectively. (Ed. Code, §§ 22109, 22155.5.) The board administers the retirement plan and CalSTRS. (Ed. Code, §§ 22001.5, 22200, subd. (a).)

(commencing with Section 3850) of Part 1 of Division 4 of the Labor Code." (Ed. Code, § 24502; see also Ed. Code, § 24501 [CalSTRS may act on its own or contract with others to recover any amounts recoverable from third persons under division 4, part 1, chapter 5 of the Labor Code].) The incorporated Labor Code sections are the subrogation provisions in the workers' compensation statutes. (Lab. Code, div. 4, pt. 1, ch. 5 ["Subrogation of Employer"], §§ 3850-3865; *Marrujo v. Hunt* (1977) 71 Cal.App.3d 972, 976 (*Marrujo*).)

The Legislature enacted the statutes giving CalSTRS a right of subrogation in 1988. (Ed. Code, former §§ 23300-23305, added by Stats. 1988, ch. 380, § 1, pp. 1699-1700, repealed and reenacted as Ed. Code, §§ 24500-24505 by Stats. 1993, ch. 893, §§ 1-2, pp. 4867, 4973-4974.) According to the legislative history, the CalSTRS subrogation provisions were "patterned" on the subrogation provisions governing the California Public Employees' Retirement System (CalPERS). (Assem. Com. on Public Employees, Retirement and Social Security, Analysis of Assem. Bill No. 3409 (1987-1988 Reg. Sess.) Apr. 5, 1988 [date of hearing], p. 2.) The similarity is apparent when one compares the two statutory schemes: The CalPERS provisions also incorporate the workers' compensation statutes, and the pertinent language of the CalSTRS and CalPERS subrogation provisions is nearly identical. (Gov. Code, §§ 20252 ["[i]f benefits are payable . . . because of an injury to or the death of a member and the injury or death is the proximate consequence of the act of a person other than his or her employer," then "the board may on behalf of [CalPERS] recover from that person"], 20253 [CalPERS may contract with others for recovery of "any amounts that the board might recover from third

11

persons under . . . Chapter 5 (commencing with Section 3850) of Part 1 of Division 4 of the Labor Code," and CalPERS's agents may "commence and prosecute actions, file liens, or intervene in court proceedings all in the same manner and to the same extent" provided in those Labor Code provisions].)

The workers' compensation subrogation provisions bar double recovery by an employee who claims workers' compensation benefits "and also seek[s] damages for the employee's injury or death from negligent third parties." (*Marrujo*, *supra*, 71 Cal.App.3d at p. 976.) Generally, for a settlement with the third-party tortfeasor to be valid, both the employee and the employer must have notice of the settlement and consent to it. (Lab. Code, §§ 3859, subd. (a), 3860, subd. (a).) But the employer's consent is not required if the settlement includes only the employee's claim for damages that will not be paid by workers' compensation benefits. (Lab. Code, § 3859, subd. (b); *Marrujo*, at p. 978.) That is, the employee may segregate their claim from that of the employer and settle it without the employer's consent. (*Board of Administration v. Glover* (1983) 34 Cal.3d 906, 913 (*Glover*); *Marrujo*, at p. 978.) If the employee segregates and settles their claim in that manner, then the settlement is not subject to the employer's claim for reimbursement of workers' compensation benefits, while the employer retains its subrogation right "against the alleged tortfeasor to recover payments it had made to its employee." (*Glover*, at p. 914; *Marrujo*, at p. 978; Lab. Code, § 3860, subd. (b).) But if the employee settles an unsegregated claim (i.e., a claim that includes both the employer's claim for reimbursement of benefits and the employee's claim for damages not compensated by benefits), then the employer may seek reimbursement out

12

of the settlement proceeds.  (*Marrujo*, at p. 978; Lab. Code, § 3860, subd. (b); accord, *Glover*, at p. 912 ["To the extent that the damages which the employee recovers from a third party simply duplicate the benefits which the employee has already received from the employer, the employee's own recovery provides a fund from which the employer may draw"].)

In *Glover*, the California Supreme Court construed the CalPERS provisions and the incorporated workers' compensation subrogation provisions as authorizing CalPERS to pursue reimbursement directly against a settling employee.[3]  CalPERS had paid disability retirement benefits to a public employee after a car accident.  (*Glover*, *supra*, 34 Cal.3d at pp. 909-910.)  Before CalPERS approved those benefits, the employee settled a personal injury claim against the driver involved in the accident without notifying CalPERS of the settlement or obtaining its consent, and CalPERS filed suit against the driver for subrogation.  (*Id.* at p. 910.)  Our high court affirmed the judgment for the driver, holding that "the burden of a failure to comply with the notice and consent statutes must fall upon the employee and not upon the third party defendant, at least where, as here, such employee is the only party to the third party settlement who both knew of the existence of the employer's claim for reimbursement and had express and timely notice of an obligation to inform the employer of any such settlement."  (*Id.* at

---

**3**    *Glover* cites the CalPERS provisions in effect at the time (Gov. Code, former §§ 21450-21455).  (*Glover*, *supra*, 34 Cal.3d at pp. 910, 918.)  The Legislature repealed and reenacted those provisions in 1995 (Gov. Code, §§ 20250-20255).  (Stats. 1995, ch. 379, §§ 1-2, pp. 1955, 1993-1994.)  The 1995 legislation reorganized those laws, but the Legislature did not intend "to make any substantive change in the law."  (Stats. 1995, ch. 379, § 5, p. 2285.)

p. 911.)  And because the settlement did not purport to exclude the benefits received from CalPERS, and the employee settled without CalPERS's consent, the employee's settlement was subject to CalPERS's claim for reimbursement.  (*Id.* at p. 914.)  The court explained that it was unaware of any "statutory or other prohibition barring [CalPERS's] institution of suit directly against the employee to recover its statutory portion of the payments it has made and will make to the employee [citation,] to the extent that share has been duplicated by the employee's recovery from the tortfeasor."  (*Id.* at p. 918.)

To summarize:  The CalSTRS subrogation provisions are based on the CalPERS subrogation provisions, and the two statutory schemes are materially similar.  Both statutory schemes incorporate the workers' compensation subrogation provisions.  The California Supreme Court has concluded that to implement CalPERS's subrogation right, CalPERS may recoup its benefit payments "from an employee who settles a tort claim (which *includes* [CalPERS's] reimbursement claim) . . . without giving [CalPERS] notice and obtaining its written consent thereto," at least when the "employee is or reasonably should be aware of the statutory notice and consent obligations."  (*Glover*, *supra*, 34 Cal.3d at pp. 918-919.)

Because *Glover*'s reasoning must apply equally to the CalSTRS subrogation provisions, we conclude that the Education Code authorizes CalSTRS to seek reimbursement directly from an employee who settles an unsegregated claim with a third-party tortfeasor without giving notice to CalSTRS and obtaining its consent, provided that the employee is or reasonably should be aware of the statutory notice and consent

14

requirements.  We therefore reject the Sotos' argument that the Education Code does not authorize CalSTRS to seek reimbursement from the Sotos directly.

II.      *Section 3333.1*

The Sotos argue that section 3333.1 completely bars any subrogation claim that CalSTRS could have asserted against the malpractice defendants, so CalSTRS was not deprived of any recovery, and it consequently cannot recover from the Sotos.  We disagree.  Section 3333.1 can, in an appropriate factual setting, bar an insurer's subrogation claim.  But because the undisputed facts of this case do not support application of section 3333.1 to bar CalSTRS's subrogation or reimbursement claim, the trial court correctly ruled in favor of CalSTRS and against the Sotos.

A.      *Statutory Background*

The Legislature enacted section 3333.1 as part of the Medical Injury Compensation Reform Act (MICRA), a "wide-ranging statutory scheme designed to reduce the cost of medical malpractice insurance 'by limiting the amount and timing of recovery in cases of professional negligence.'"  (*Flores v. Presbyterian Intercommunity Hospital* (2016) 63 Cal.4th 75, 81; Stats. 1975, 2d Ex. Sess. 1975-1976, ch. 1, §§ 1, 24.5, pp. 3949, 3968.)  The Legislature was responding "to a medical malpractice insurance 'crisis,' which it perceived threatened the quality of the state's health care."  (*Western Steamship Lines, Inc. v. San Pedro Peninsula Hospital* (1994) 8 Cal.4th 100, 111.)

MICRA addressed the problem in numerous ways, including by revising certain legal rules applicable to medical malpractice litigation.  (*Barme*, *supra*, 37 Cal.3d at p. 179.)  Section 3333.1 is one of those revisions—it supersedes the common law

collateral source rule in medical malpractice litigation.  (*Fein v. Permanente Medical Group* (1985) 38 Cal.3d 137, 164 (*Fein*).)  Under the common law rule, "a jury, in calculating a plaintiff's damages in a tort action, does not take into consideration benefits—such as medical insurance or disability payments—which the plaintiff has received from sources other than the defendant—i.e., 'collateral sources'—to cover losses resulting from the injury." (*Ibid*.)  Accordingly, evidence of the plaintiff's receipt of collateral benefits generally is inadmissible for the purpose of mitigating damages in an action against the tortfeasor.  (*Hrnjak v. Graymar, Inc.* (1971) 4 Cal.3d 725, 730.)

But under section 3333.1, a defendant in a medical malpractice action may "introduce evidence of a variety of 'collateral source' benefits—including health insurance, disability insurance or worker's compensation benefits" for the purpose of mitigating damages.  (*Barme*, *supra*, 37 Cal.3d at p. 179.)  Subdivision (a) of the statute states:  "In the event the defendant so elects, in an action for personal injury against a health care provider based upon professional negligence, he may introduce evidence of any amount payable as a benefit to the plaintiff as a result of the personal injury pursuant to the United States Social Security Act, any state or federal income disability or worker's compensation act, any health, sickness or income-disability insurance, accident insurance that provides health benefits or income-disability coverage, and any contract or agreement of any group, organization, partnership, or corporation to provide, pay for, or reimburse the cost of medical, hospital, dental, or other health care services.  Where the defendant elects to introduce such evidence, the plaintiff may introduce evidence of any

16

amount which the plaintiff has paid or contributed to secure his right to any insurance benefits concerning which the defendant has introduced evidence." (§ 3333.1, subd (a).)

Section 3333.1, subdivision (a), does not specify how jurors should use the collateral source evidence, but "the Legislature apparently assumed that in most cases the jury would set plaintiff's damages at a lower level because of its awareness of plaintiff's 'net' collateral source benefits." (*Fein*, *supra*, 38 Cal.3d at pp. 164-165.) The provision permits the introduction of evidence regarding future as well as past collateral source benefits. (*Cuevas v. Contra Costa County* (2017) 11 Cal.App.5th 163, 178.)

"In addition, section 3333.1, subdivision (b) provides that whenever such collateral source evidence is introduced, the source of those benefits is precluded from obtaining subrogation either from the plaintiff or from the medical malpractice defendant." (*Fein*, *supra*, 38 Cal.3d at p. 165.) The subdivision states: "No source of collateral benefits introduced pursuant to subdivision (a) shall recover any amount against the plaintiff nor shall it be subrogated to the rights of the plaintiff against a defendant." (§ 3333.1, subd. (b).) Subdivision (b) of section 3333.1 thus protects the malpractice plaintiff from suffering a "'double deduction.'" (*Fein*, at p. 165.) Because the jury that has learned of the malpractice plaintiff's benefits may reduce the damages award to account for those benefits, "the Legislature eliminated any right the collateral source may have had to obtain repayment of those benefits from the plaintiff." (*Ibid.*) "As for the malpractice defendant, subdivision (b) assures that any reduction in malpractice awards that may result from the jury's consideration of the plaintiff's

17

collateral source benefits will inure to [the defendant's] benefit rather than to the benefit of the collateral source." (*Ibid*.)

In effect, section 3333.1 provides that if a medical malpractice plaintiff pursues a segregated claim against the tortfeasor (i.e., the plaintiff seeks only damages that exclude any benefits paid by a collateral source), then the collateral source cannot seek subrogation or reimbursement from anyone. Outside the medical malpractice context, if the plaintiff resolves a segregated claim by either trial or settlement, then the collateral source may seek subrogation against the tortfeasor under certain circumstances. But in the medical malpractice context, section 3333.1 cuts off the collateral source's subrogation right.

B. *Analysis*

The trial court correctly determined that section 3333.1 does not bar CalSTRS's reimbursement claim. The Sotos did not offer any evidence that the malpractice defendants sought to introduce evidence of Arasely's disability retirement benefits in the underlying action, so section 3333.1 was never triggered. In addition, if the Sotos had offered such evidence, then section 3333.1 would be irrelevant. The same evidence would tend to show that CalSTRS has no reimbursement claim against the Sotos for reasons independent of section 3333.1.

To elaborate, section 3333.1, subdivision (a), authorizes a medical malpractice defendant to "introduce evidence" of the plaintiff's collateral source benefits "[i]n the event the defendant so elects." Subdivision (b) precludes the "source of collateral benefits introduced pursuant to subdivision (a)" from recovering against either the

18

medical malpractice plaintiff or the defendant. (§ 3333.1, subd. (b); see *Fein*, *supra*, 38 Cal.3d at p. 165 ["whenever such collateral source evidence is introduced, the source of those benefits is precluded from obtaining subrogation"]; Haning et al., Cal. Practice Guide: Personal Injury (The Rutter Group) ¶ 3:2050 ["a medical malpractice defendant *can*, if it so elects, introduce evidence of 'collateral' benefits plaintiff received . . . by reason of the injury, thereby foreclosing the 'collateral source's' right to recover"].) It follows that if the malpractice defendant did not rely on evidence of collateral source benefits in the malpractice action, then the circumstance triggering the bar on subrogation or reimbursement does not exist.

That is not to say that section 3333.1 requires a trial or some other court proceeding at which the medical malpractice defendant formally introduces evidence. Rather, section 3333.1 may apply in the settlement context. *Graham v. Workers' Comp. Appeals Board* (1989) 210 Cal.App.3d 499 (*Graham*) illustrates the point. In *Graham*, a bus driver employed by the county was injured in an on-the-job accident. (*Id.* at p. 502.) The bus driver filed an application for workers' compensation benefits and also filed a medical malpractice action against the doctor who treated his injuries arising from the accident. (*Ibid.*) The bus driver accepted $150,000 from the doctor to settle the malpractice action. (*Ibid.*) The court in the malpractice action found that the parties entered the settlement in good faith and that the settlement was limited to damages for pain and suffering. (*Ibid.*) The county petitioned for a $150,000 credit (the amount of the settlement) against the county's liability for future workers' compensation benefits.

19

(*Ibid.*)  The Workers' Compensation Appeals Board (WCAB) concluded that section 3333.1 did not preclude the county's credit claim.  (*Graham*, at p. 503.)

The *Graham* court annulled the WCAB's decision.  (*Graham*, *supra*, 210 Cal.App.3d at p. 509.)  The county argued that section 3333.1 did not apply, because there was no medical malpractice trial at which the doctor introduced evidence of workers' compensation benefits.  (*Graham*, at p. 507.)  The appellate court rejected that argument, holding that subdivision (b) of section 3333.1 barred the employer's credit claim "whenever an injured party has demonstrably had [their] recovery reduced to reflect collateral source contributions."  (*Graham*, at p. 508.)  And in that case, "the parties in the underlying medical malpractice case made an adequate factual record that [the bus driver's] settlement was reduced to exclude any recovery for collateral source benefits."  (*Ibid.*)  The factual record consisted of a declaration from the bus driver's counsel in the medical malpractice action and a transcript of the settlement conference in that case.  (*Id.* at p. 502 & fn. 1.)  According to counsel's declaration, he indicated to the trial court at the settlement conference that the bus driver's "medical expenses and disability would not be considered in the settlement because the defense would introduce evidence that workers' compensation benefits would pay those damages."  (*Id.* at p. 502.)  According to the transcript of the settlement conference, counsel for both parties understood that the $150,000 settlement represented general damages for pain and

20

suffering, and the bus driver was dismissing his claim for special damages.[4] (*Id.* at p. 502, fn. 1.) The transcript also showed that the trial court found the settlement represented damages for pain and suffering. (*Ibid.*) On that record, the *Graham* court agreed with the bus driver that "the conditions for invoking" subdivision (b) of section 3333.1 to bar the collateral source's subrogation claim were satisfied. (*Graham*, at p. 507; *id.* at p. 508.)

The Sotos made no such showing in this case. In opposition to the summary adjudication motion, the Sotos did not offer any evidence that the defendants in the medical malpractice action sought to introduce evidence of Arasely's prospective disability benefits, that they sought to reduce her settlement payment in reliance on her prospective disability benefits, or that the settlement actually was reduced to reflect prospective disability benefits. Nor did the Sotos offer any such evidence in support of their motion for summary judgment. The record shows that one of the malpractice defendants, Dr. Borna, subpoenaed records regarding Arasely's "pension benefits" roughly 10 months before the parties settled, and roughly 10 months before Arasely applied for disability benefits. But there is no evidence showing what records were produced to Dr. Borna, whether those records said anything about the amount of disability benefits that Arasely had received or was likely to receive in the future, what

---

[4]    In personal injury cases, general damages "include damages for '"pain [and] suffering, emotional distress, and other forms of detriment that are sometimes characterized as 'subjective' or not directly quantifiable."'" (*Licudine v. Cedars-Sinai Medical Center* (2016) 3 Cal.App.5th 881, 892.) Special damages are out-of-pocket losses like "medical and related expenses as well as lost income." (*Ibid.*)

21

Dr. Borna did with the information provided, or how any such information might have affected the settlement amount. Accordingly, the Sotos failed to show that "the conditions for invoking" section 3333.1, subdivision (b), were satisfied in this case. (*Graham*, *supra*, 210 Cal.App.3d at p. 507.)

Moreover, if the Sotos had offered evidence showing that section 3333.1 was triggered, then that evidence would have also showed that section 3333.1 is irrelevant in this case. That is, if there were evidence that the medical malpractice defendants considered Arasely's disability retirement benefits, and the parties reduced the settlement amount accordingly, in effect the Sotos would have segregated their claim from CalSTRS's claim for reimbursement of Arasely's benefits. According to *Glover*, the segregation of the Sotos' claim would render the "settlement . . . free from [CalSTRS's] claim for reimbursement," regardless of whether the Sotos failed to obtain CalSTRS's consent to the segregated settlement. (*Glover*, *supra*, 34 Cal.3d at p. 914.) That conclusion would follow from *Glover* and its analysis of the workers' compensation and CalPERS subrogation provisions. Thus, for reasons independent of section 3333.1, CalSTRS would have no reimbursement claim against the Sotos.

In sum, section 3333.1 has no application in this case. The Sotos failed to show that the medical malpractice defendants relied on evidence of Arasely's disability retirement benefits in the underlying action, so there is no evidence that section 3333.1's bar on subrogation or reimbursement was triggered. But if the Sotos had made that showing, then the same evidence would have shown that the Sotos settled a segregated claim, so CalSTRS would have no reimbursement claim against the Sotos for reasons

22

independent of section 3333.1.  The trial court correctly determined that section 3333.1 does not bar CalSTRS's reimbursement claim against the Sotos.[5]

## DISPOSITION

The Sotos' petition for writ of mandate is denied.  The previously ordered stay is dissolved.  The parties shall bear their own costs incurred in this writ proceeding.  (Cal. Rules of Court, rule 8.493(a)(1)(B).)

CERTIFIED FOR PUBLICATION

MENETREZ
J.

We concur:

CODRINGTON
Acting P. J.

RAPHAEL
J.

___

[5]      The court also reasoned that section 3333.1 does not apply because (1) Arasely's disability retirement benefits are not among the collateral sources enumerated in subdivision (a) of section 3333.1, and (2) the Legislature enacted CalSTRS's right of subrogation under the Education Code nearly 20 years after MICRA, so the Education Code provisions prevail over section 3333.1.  The Sotos argue that those rulings were incorrect, and CalSTRS disagrees.  Resolution of those issues is unnecessary to our analysis, so we do not address them.